Plaintiff's defense was somehow unlawful. [Tr. 11/14/06 at 15, 16.]

579. Plaintiff Robert J. Fileccia, Esq. responded by asking Judge Rooney to place Shulman under oath and Order him to repeat his false accusations. Shulman immediately withdrew his fraudulent claims, and begged the Court to have them "stricken from the record." See Tr. 11/14/06 at 17, 18.

580. The Court denied Shulman's motion to be relieved as counsel, notwithstanding his irreconcilable conflict of interest and unmistakable intent to help prosecutors maliciously prosecute the Plaintiff for a crime he knew Robert Fileccia did not commit.

581. Judge Rooney sent the Plaintiff Robert Fileccia to trial with a DA operative masquerading as *standby* counsel.

582. On several occasions thereafter, Robert Fileccia called Shulman at his office. However, during the recorded conversations, Shulman disguised his voice and claimed to be a receptionist named "Tom" to avoid the Plaintiff's telephone calls.

583. Defendant Shulman conspired and acted in concert with ADA Mattei and others to maintain the Plaintiffs' malicious prosecution in violation of the Plaintiffs' clearly established Fourth Amendment constitutional right against unwarranted searches and seizures and constitutional right not to be maliciously prosecuted.

584. Defendant Shulman conspired and acted in concert with ADA Mattei and others to deny Plaintiff Robert J. Fileccia effective assistance of counsel in violation of his Sixth Amendment constitutional right to counsel and a fair trial.

585. Defendant Shulman knowingly and intentionally breached his contract with the Plaintiff.

586. Defendant Shulman knowingly and intentionally breached his fiduciary duty to the Plaintiff.

587. Defendant Shulman knowingly and intentionally breached his ethical responsibilities to the Plaintiff.

588. Based upon information and belief, Defendant Shulman breached the Plaintiff's attorney client privilege.

## THE PLUMBERS TEAM

589. This section is designed to inform the Federal District Court of disturbing events, facts and circumstances **leading up to** the dismissal of the Plaintiffs' Car Indictment, which was in favor of the accused. The Second Circuit has ruled that an "[a]nswer to whether termination of underlying criminal proceedings is indicative of innocence, for purposes of subsequent malicious prosecution action under New York law, depends on nature and circumstances of termination. If, however, there is question as to nature of circumstances **leading to that termination**, that question is one for trier of fact." [Emphasis supplied.] Murphy v. Lynn, 118 F.3d 938. Therefore, the following facts and circumstances are mandatory.

590. This section is not intended to disparage the State Supreme Court or any other authority. However, the truth in this case has been chased from courtroom to courtroom, not by any great legal act on the part of prosecutors I might add, but by the Judiciary. Therefore, it would be cowardly for me not to express my deepest concerns and fears for innocent United States citizens who may find themselves hauled into Court before the below named magistrates that the record evidence will show regard the United States Constitution as a troublesome annoying document that can be played with like a child's doll.

591.    The Federal District Court may recall that "the Plumbers" were a covert White House Special Investigations Unit established during the Presidency of Richard Nixon. Its task was to stop the leaking of classified information to the news media. Webster's Online Dictionary defines a plumber as "a person whose job is to prevent or put an end to leaks of sensitive information."

592.    During the criminal proceedings in this case, three State Supreme Court Judges repeatedly denied the Plaintiffs' meritorious motions that were supported by overwhelming admissible factual evidence of the prosecutors' criminal activity including ADA Frey's theft of the Plaintiffs' mail. The Judges denied, would not consider, or purposely failed to rule upon many of the Plaintiffs' dispositive motions. For example, defense attorney Herald Price Fahringer, Esq. argued that because a garageman's lien is a wholly exculpating defense to the prosecutor's fraudulent "grand larceny of automobile" charges, the provisions of New York Lien Law §184(1) —that lawfully permits an auto mechanic to withhold a consumer's automobile as security pending payment for the services rendered—should have been charged to the Grand Jury. See People v. Harris, 98 N.Y.2d 452 (2002) and People v. Valles, 62 N.Y.2d 36 (1984). However, notwithstanding ADA Frey's admission that he did not inform the Grand Jury of the Plaintiffs' statutory right to a mechanic's lien, Judge Leonard Rienzi's April 30, 2004 written decision remained suspiciously silent on the critical and dispositive issue. The Supreme Court also surreptitiously ignored other dispositive applications including (a) motions to inspect a 1986 Corvette that would have proven the Plaintiffs' innocent of 28 felonies; (b) motions to dismiss the indictment because of the prosecutors' destruction of exculpatory evidence; (c) 6th Amendment motion to provide the Plaintiffs with the nature

and cause of the accusations against them; (d) motions for the appointment of a special prosecutor; (e) motions for exculpatory evidence; (f) motions to enforce the Court's discovery Orders (that were illusory); among many others.

593.    As the evidence mounted against prosecutors, their responses became increasingly muted.

594.    On some occasions, prosecutors did not oppose the Plaintiffs' motions, the Judges did. See Tr. 5/11/06 at 1-23.

595.    On other occasions, the Judges misused motion practice for intelligence gathering purposes. See J. Rienzi 1/6/06 decision "extending [Plaintiffs'] time to file all motions until January 20, 2006" inviting "the promised Franks-Alfinito motion." [Emphasis in the original.]   Compare to J. Rienzi 5/8/06 decision where the Court argues its own arguments in opposition to the Plaintiffs' 100-page Franks motion and refused to even consider the Plaintiffs' 2-page unopposed warrantless search and seizure motion as being purportedly "untimely", notwithstanding his clear and unambiguous invitation to file all motions by January 20, 2006.

596.    And on still other occasions, the Judges and prosecutors would talk to one another in code or with flash messages. See Tr. 6/14/04 at 21, where ADA Frey sent J. Rienzi an unsolicited warning in open court, entirely unrelated to the proceedings, that the Plaintiffs just purchased the prosecutor's fabricated arrest evidence;

    ADA Frey:      "Judge, on a side note, there have been issues about the Corvette. They wanted access again and again to the Corvette.   I've been informed that they purchased that Corvette for fifteen thousand dollars … they either have the car or they are about to get the car, but I want you to know."

597.    On January 29, 2007, Plaintiff Robert J. Fileccia, Esq. asked Judge Steven Rooney in open Court for the appointment of a special prosecutor based upon newly discovered

evidence of ADA Frey's ongoing mail crimes.  Without ADA Frey saying a word, Judge

Rooney buried the charges and said, "The DA is in no position to answer it now."

Robert Fileccia:      Your Honor, do you also direct me to make this same application which I'm about to make to you now, to Judge Collini?  And the application is this, your Honor:  Based upon newly discovered evidence, including eyewitnesses, it has been confirmed and verified that Assistant District Attorney David Frey and others have been stealing the defendant's United States mail for almost five years to cover up the District Attorney's attempted theft of approximately one million dollars of the Fileccia family's lifetime savings in the car indictment and to manufacture the tax indictment in retaliation for the defendants uncovering the District Attorney's criminal activity.

I'm accusing Assistant District Attorney David Frey of the Richmond County District Attorney's Office of having intentionally committed federal mail crimes including violation of 18 USCS 1701 obstruction of mail generally, 18 USCS 1702 obstruction of correspondence, 18 USCS 1708 theft or receipt of stolen mail generally, 18 USCS 1341 fraud and swindles.  As a result, I must prepare and file a comprehensive motion for an appointment of a special prosecutor with federal oversight.

Your Honor will recall that on July 13, 2006, this Court granted the prosecutor's leave to file a motion for a special prosecutor which they never made. ...

Judge Rooney:      They withdrew it.

Gary G. Becker:     They didn't withdraw it. They never made it.

Judge Rooney:      Fine.

Robert Fileccia:      However, the prosecutors in this pending indictment, Ms. Varriale and David Frey have become fact witnesses and must be disqualified under the holding of People v. Paperno (ph), 54 New York 2nd 294.  Your Honor, these prosecutors cannot try this case.  I'm entitled to my due process right to have a special prosecutor appointed and for me to make – file a written motion for that appointment, your Honor.  It has been confirmed by eyewitnesses and ear witnesses who are prepared to testify against the prosecutors.

Judge Rooney:      All right.  Well, that wasn't in the papers you filed this morning.  The DA is in no position to answer it now.  [Tr. 1/29/07 at 17-19.]

598. On January 30, 2007, Judge Robert Collini was equally dismissive of Plaintiff Robert J. Fileccia, Esq.'s open court accusation that the United States Postal Service had implicated Judge Leonard Rienzi in having received illegal ex parte communications about ADA Frey's theft of the Plaintiffs' mail. Judge Collini fraudulently mischaracterized Robert's allegations as "an attempt to delay the trial."

| | |
|---|---|
| Judge Collini: | Now, lets move forward. |
| Robert Fileccia: | All right, Judge. I have two other newly discovered information that was not before your Honor, which is that I have received evidence that indicates Justice Leonard Rienzi has received ex parte communications from the United States Postal Service in reference to Assistant District Attorney David Frey's theft of the defendant's mail. The information is dated – well, it's my understanding that it was before June 22, 2005. |
| | The problem of constitutional dimension, your Honor, is that since Justice Rienzi rendered a decision shortly before that time, not entertaining a two page motion in reference to an expired search warrant and a warrantless search of 496 Willowbrook Road, your Honor, that is of constitutional dimension and we should investigate that because – |
| Judge Collini: | I'm going to stop you. How old is this case? |
| Robert Fileccia: | This one here, the tax case? |
| Judge Collini: | This one we're trying. |
| Robert Fileccia: | Three years is my understanding. |
| Judge Collini: | And how many days is that? |
| Robert Fileccia: | I – |
| Judge Collini: | It's over a thousand days. And in that thousand days, how much time have you had to investigate these allegations? |
| Robert Fileccia: | Your Honor, this is newly discovered evidence. |
| Judge Collini: | Counsel – |
| Robert Fileccia: | I'm an officer of this Court. I have to verify information before I come out and say such things on the record. And under the federal rules, I would have to evaluate all the evidence before I make such a statement, judge, so that I am not held in contempt. |
| Judge Collini: | I don't have any intention at this time of holding you in contempt. |

| Robert Fileccia: | But, Judge – |
| Judge Collini: | I'm going to stop you. |
| Robert Fileccia: | That's why it's so important. |
| Judge Collini: | I'm going to stop you. |
| | Besides, I don't see anything before me but you saying something. |
| | There are two things that I want you to at least address briefly. One, the relevance of whatever you're talking about to this indictment. That's number one. |
| | Number two, beside your simple allegation, unsubstantiated allegation, what more is there for me to review? |
| Robert Fileccia: | Well ... I have concerns about releasing information about federal mail crimes to the parties, namely, to David Frey, who committed the crime. That may be an obstruction of justice. I'm an officer of the court, Judge. |
| Judge Collini: | I'm going to stop you. |
| Robert Fileccia: | You said you wanted the relevancy to this case. |
| Judge Collini: | Okay. You can go there too. It really doesn't matter if it's relevant or not if there nothing to substantiate what you're saying to me. |
| Robert Fileccia: | Your Honor, may I say the relevancy, which is terribly important? |
| | Grand Jury Exhibit number 29 is a notice of deficiency purportedly mailed to me at my home saying that I owe the Department of Taxation, I believe it said, sixty thousand dollars. |
| | Well, your Honor, I didn't receive that and that's Brady material. And if I didn't receive it and the District Attorney's Office stole it and destroyed it, so therefore, your Honor, it's relevant. |
| Judge Collini: | Stop ... every application from here on ... will be viewed as an attempt to delay the trial. [Tr. 1/30/07 at 33-36.] |

599. However, less than a week later, on February 6, 2007, Steven Orlando testified under oath and admitted to stealing the Plaintiffs' mail and sending it to ADA Frey during his cross examination. Judge Collini abruptly stopped the cross examination and threw the jury out of the courtroom for them never to return again.

| | |
|---|---|
| Q: | Mr. Orlando, did you occupy the building throughout the calendar year 2004 and 2005? |
| Steven Orlando: | Datacomm, yes. |
| ADA Bousquet: | Objection. |
| Judge Collini: | Let's see where we are going. Overruled. |
| **Q:** | **Do you, in connection with Datacomm, have an account with the Federal Express company?** |
| ADA Bousquet: | Objection. |
| **Steven Orlando:** | **I'm sure we do.** |
| Judge Collini: | Counsel, if there is something to this, let's get to it. |
| Q: | Yes, your Honor. I'm trying to do it with a foundation properly. |
| Judge Collini: | Go ahead. |
| Q: | And in connection with your account with Fed-Ex, did they issue you pre-printed air bills? |
| Steven Orlando: | Yes. |
| Q: | And when you send something Fed-Ex, do you use those air bills? |
| Steven Orlando: | Yes … |
| Q: | And do you know an individual named David Frey? |
| ADA Bousquet: | Objection. |
| Judge Collini: | If you have a point to this, get to it … Get there quickly. |
| **Q:** | **Who is David Frey?** |
| **Steven Orlando:** | **He's an ADA.** |
| **Q:** | **How do you know him?** |
| **Steven Orlando:** | **From this case …** |
| Q: | And, by the way, he's an ADA in this office, the Richmond County District Attorney's Office, right? |
| Steven Orlando: | Yes. |
| Q: | And to your knowledge, he's been prosecuting one or both of the Fileccias? |
| ADA Bousquet: | Objection, judge. |
| Judge Collini: | Overruled. |
| Q: | Is that your understanding, sir? |
| Steven Orlando: | Yes. |
| **Q:** | **And have you been working with him assisting him in that prosecution?** |
| **Steven Orlando:** | **Well, what do you mean by assisting?** |

| | |
|---|---|
| **Q:** | **Well, have you been providing him with pieces of paper of any kind?** |
| Steven Orlando: | Yes. |
| **Q:** | **And would those pieces of paper include sealed envelopes?** |
| Steven Orlando: | Yes. |
| **Q:** | **And would those sealed envelopes include United States Postal Service mail?** |
| ADA Bousquet: | Objection. |
| Judge Collini: | Alright, ladies and gentlemen, you are going to step outside ... Mr. Orlando, you can step out too.  [Tr. 2/6/07 at 213-217.] |
| Judge Collini: | The Jury is out of the room.  The witness is out of the room and the door is closed.  Mr. Becker, what are we talking about? ... |
| **Q:** | **I'm going to prove, if your Honor lets me, that this man is a thief.  He has been stealing Mr. Fileccia's mail, the mail that would have given him notice of a civil tax audit.  He has been stealing his mail and sending it to Assistant District Attorney David Frey.** |

600.    Knowing that ADA Frey committed a felony, Judge Robert Collini spent the balance of

the afternoon and next morning:

a)  Concealing and or downgrading ADA Frey's criminal activity;

b)  Looking for a suitable exit strategy; and

c)  Attempting to tie off the DA's black operation by undermining the Plaintiffs'

access to the Courts.  See Tr. 2/6/07 213-240, including:

| | |
|---|---|
| Judge Collini: | And as far as the relevance, I'm not really sure how relevant it is, in any event. Even if it was something he was doing, **unless the suggestion is somehow he was working in cahoots with the District Attorney's Office to set Mr. Fileccia up –** |
| Gary Becker: | Does your Honor really believe that a citizen of the United States has the right to take – it's a felony. |
| Judge Collini; | Stop, stop.  It's a felony if it's done willfully. |
| Gary Becker: | Ahhh, yes. |
| Judge Collini; | If it's not done willfully, it's not. |

Gary Becker:      That's this whole case.

Judge Collini:    Counsel, I wasn't asking for you to make comment on this. ...
                  Maybe you should sit down. [Tr. 2/6/07 at 233, 234.]

                                    ***

Judge Collini:    I know the implication is that he was doing something
                  nefarious, and maybe in a different tribunal people will
                  investigate as to whether or not something nefarious was
                  done. And if you say you have other evidence with respect to
                  that, submit it to whoever you need to submit it to and maybe
                  they'll think an investigation should occur, but that's not what
                  we are doing here ...

Gary Becker:      I guess these circumstances struck my outrage meter more
                  than your Honor's.

Judge Collini:    It's not what I'm doing. I'm doing this trial. Maybe someday I'll
                  do that trial and then we'll talk about it, but that's not what we
                  are doing here.

**ADA Varriale:   I'm afraid we are going to get to the point where the
                  witness is going to need to be advised of his Miranda
                  warnings.**

Judge Collini:    Is there any debate as to the fact that he sent mail [to ADA
                  Frey]?

ADA Varriale:     No, he sent it. [Tr. 2/6/07 at 239.]

601.   ADA Varriale warned Judge Collini that as a State prosecutor she would soon be required
       to read Steven Orlando his Miranda warnings because Orlando's theft of the Plaintiffs'
       mail was in fact willful.

## JUDGE ROBERT COLLINI'S TORTURE TACTICS

602.   During Plaintiff Robert J. Fileccia, Esq.'s Tax Indictment trial that was dismissed on
       February 7, 2007 in favor of the accused, State Supreme Court Judge Robert Collini
       employed numerous unconstitutional torture tactics in his failed attempt to coerce the
       indigent pro se Plaintiff into pleading guilty to a crime the record evidence clearly
       showed he did not commit.

603.   The following torture tactics are unconstitutional and customarily used only to break-

down enemy combatants, not innocent United States citizens.

604.    In order to isolate the indigent pro se Plaintiff, Judge Collini

    a)  stripped Robert J. Fileccia of his fundamental constitutional right to assigned counsel;

    b)  stripped the Plaintiff of his constitutional right to assigned tax experts; and

    c)  stripped the Plaintiff of his constitutional right to free daily transcripts, notwithstanding being certified to be a poor person on November 25, 2005 by Judge Leonard Rienzi. See Tr. 11/25/05 at 3, 4.

605.    In order to induce stress and intimidation, Judge Collini ordered at least three (3) armed court officers to surround Plaintiff Robert J. Fileccia, Esq. during trial although he was charged with one non-violent fabricated tax offense.

606.    In order to induce physical discomfort and vomiting, Judge Collini ordered Court officers to confiscate the Plaintiff's bottled water after they brought him to an elevated state of nervousness.

607.    In order to induce fear, Judge Collini threatened Plaintiff Robert J. Fileccia, Esq. with "remanding" him to prison at the beginning of trial notwithstanding his being released on his own recognizance at the arraignment of the 1-count alleged tax offense.

608.    In order to induce sensory deprivation, Judge Collini ordered the Court clerk to shut off the microphone at the Plaintiff's trial table.

609.    In order to induce anxiety, Judge Collini lambasted the Plaintiff throughout the trial in a loud omnipotent tone.

610.    In order to induce a feeling of abandonment, Judge Collini ordered Court officers to segregate Plaintiff's family members to the very back of the Courtroom, behind more

than one hundred prospective jurors, Assistant District Attorneys, and court personnel.

611.    In order to induce physical illness, Judge Collini ordered Plaintiff to put away pneumonia medication that was sure to be overlooked during trial.

612.    In order to induce hopelessness, Judge Collini ordered Robert J. Fileccia, Esq. to hide a religious item (rosary) and blasphemed the Plaintiff's faith during trial.

613.    The foregoing torture tactics were intended to cause not just momentary suffering but lasting psychological harm throughout the trial and thereafter.

614.    In the end, Judge Robert Collini's mendacity was exposed in his own words. Plaintiffs respectfully incorporate by reference the entire trial transcript of Indictment 23/2004 into this Complaint.

## JUDGE ROBERT COLLINI TAMPERED WITH JURORS

615.    Judge Robert Collini surreptitiously tampered with jurors during Plaintiff Robert J. Fileccia, Esq.'s Tax Indictment trial including but not limited to the following examples.

616.    At the onset of jury selection, Judge Collini intentionally demonized Robert Fileccia to corrupt the jury pool.  Without basis or provocation, Judge Collini instructed jurors that the Plaintiff "will be expected to conduct himself in the appropriate fashion … to speak only if it's his turn to speak and to use appropriate language … to be respectful to everyone in the Courtroom" and "should the Plaintiff seek to gain some advantage as a result of his self representation, I may be compelled, as I just was, to admonish him and to take corrective action." [Tr. 2/1/07 at 53, 54.]

617.    When confronted by Plaintiff Robert J. Fileccia, Esq. about the Court's unprovoked prejudicial jury instructions, Judge Collini agreed to give the jury a curative instruction that was eventually meaningless because of the Court's delay and its mundane content.

See Tr. 2/1/07 at 84-86, and 91-97.

618.    During the *voir dire* of the jury, Judge Collini also tampered with prospective jurors by asking them whether they ever had a car stolen.  He did this knowing that the Plaintiffs were falsely accused of stealing automobiles in the 309-Count Car Indictment.

619.    Question number 10 (c) on the Juror Questionnaire form states: Have you or any member of your family "Ever been a victim of a crime."

620.    If a Juror said they were <u>not</u> the victim of a crime, Judge Collini would still ask them whether they ever had a car stolen.

621.    **Judge Collini asked thirteen (13) prospective jurors whether they ever had a car stolen attempting to corrupt the jury pool.**  See Tr. 2/1/07 at 99, 103, 118, 119, 120, 121, 126, 185, 188. See also Tr. 2/5/07 at 321, 324, 326, 330.

622.    The following are two examples:

| Judge Collini: | Go to C.  Have you ever been the victim of a crime? |
| Prospective Juror: | No, I haven't. |
| Judge Collini: | Never had your car stolen? |
| Prospective Juror: | No.  [Tr. 2/1/07 at 120, 121.] |

***

| Judge Collini: | Have you ever been the victim of a crime? |
| Prospective Juror: | No. |
| Judge Collini: | Never had a car stolen or anything like that? |
| Prospective Juror: | No. |

623.    By any objective standard, the record evidence indicates that there is no other plausible explanation for what happened in this case other than a criminal conspiracy between prosecutors and the Judiciary to find and stop leaks of the ADAs criminal activity and to convict the Plaintiffs by the use of any means necessary.

624.    The Judiciary in this case was not fair and impartial, but instead were "plumbers" operating out of the basement of the Richmond County Supreme Court.


### THE PLAINTIFFS' INDICTMENT WAS DISMISSED IN FAVOR OF THE ACCUSED.

625.    Trial of the 5-year-old Car Indictment began on February 23, 2007.

626.    In the wake of Steven Orlando's February 6, 2007 confession that he and ADA Frey have been stealing the Plaintiffs mail for years—ADA David Frey was nowhere to be found.

627.    Straining credulity, ADA Varriale said that Frey was purportedly "on vacation" during trial of the largest fabricated indictment in United States history. She made wild and unsubstantiated excuses for ADA Frey's disappearance including, "He'll be back to work on Tuesday. I'm trying to get in touch with him now." [Tr. 2/23/07 at 21.]

628.    The truth was that the District Attorney's Office squirreled ADA Frey away knowing that the Plaintiffs packed the courtroom with over a dozen licensed private investigators, retired FBI agents and postal inspectors, forensic mechanical experts, certified court reporters and other witnesses who were eagerly waiting to testify against Frey—including his own 'witnesses'.

629.    But ADA Frey did not show up on Tuesday, at which time ADA Varriale contended, "He is back in the state. He got on a plane last night I believe." [Tr. 2/26/07 at 45, 46.]

630.    However, none of this was true, and Judge Robert Collini knew it. On, February 23, 2007, Plaintiff Robert J. Fileccia, Esq. informed the Court that ADA Frey's prosecution witnesses were never informed of the Plaintiffs' trial and haven't spoken with ADA Frey or anyone else in the District Attorney's Office in years. The 5-year-old trial was a SCANDAL!

143

| | |
|---|---|
| Robert J. Fileccia, Esq.: | You mentioned moments ago that Miss Varriale asked for a two week continuance. Your Honor denied that motion. I appreciate that for the reason that we found out during our investigation yesterday in serving the subpoenas that this entire proceeding, the car case, is a SCANDAL. These prosecution witnesses haven't been informed of the trial. They haven't been contacted for years. [Emphasis added.] |
| Judge Collini: | Calm down. We're going to try to keep the emotion out of the argument. |
| Robert J. Fileccia, Esq.: | I'm trying to. They haven't been contacted in years. |
| Judge Collini: | Mr. Fileccia, if the witnesses are not available, I assume it will make it much more difficult for the People to meet their burden. So, we'll obviously cross that bridge when we come to it." [Tr. 2/23/07 at 14, 15.] |

631. **Regrettably, Judge Collini's serious misconduct continued. Here, Plaintiff Robert J. Fileccia Esq. did _not_ say that the prosecution witnesses were "unavailable" as Judge Collini suggested. The Plaintiff said that ADA Frey hasn't spoken to his witnesses in years thus proving the DA's voluntary abandonment of the fraudulent accusations.**

632. On February 22, 2007, Plaintiff Robert J. Fileccia, Esq.'s process server served prosecution witness Isabel Cornier with a subpoena to testify at trial because there were six felony counts remaining against the Plaintiffs concerning her automobile. The following occurred:

| | |
|---|---|
| Cornier: | Who is it? |
| Process Server: | Oh, hi. Uhh, I was sent from the agency. Did they call you? |
| Cornier: | What agency? |
| Process Server: | Uhh, I'm a process server. |
| Corier: | For what? |
| Process Server: | Okay, uhh, you're supposed to be due in – for trial on Monday. Didn't the DA office call you? … |
| Cornier: | No. |

| | |
|---|---|
| Process Server: | Alright. They should have called you. I have, uhh, a subpoena her to, uhh, appear on Monday. |
| Cornier: | I'm sorry, what is this about? … |
| Process Server: | I have a subpoena for Monday for trial .. |
| Cornier: | This Monday? |
| Process Server: | The DA office should have contacted you. They didn't contact you? |
| Cornier: | I'm sorry for what? |
| Process Server: | I'm just to serve a subpoena for trial for Monday. |
| Cornier: | For what trial? |
| Process Server: | Well, all the information is in here. There's a contact number to call on Monday to see when you should appear but the DA should have contacted you. |
| Cornier: | No. I know nothing about this. |

633.  On February 26, 2007, prosecution witness Isabel Cornier called Plaintiff Robert J. Fileccia, Esq. and complained that she knew nothing about the trial and hadn't spoken to ADA Frey in at least 18 months. The recorded conversation revealed the following:

| | |
|---|---|
| Robert J. Fileccia, Esq.: | Hello. |
| Cornier: | Hi, it's Isabel. Who am I speaking with? |
| Robert J. Fileccia, Esq.: | Robert. Hi Isabel, how you doing? |
| Cornier: | Alright. |
| Robert J. Fileccia, Esq.: | Okay, the last we left off is that I do not need you for tomorrow. … David Frey hasn't even showed up yet, I don't know if you know that, so … |
| Cornier: | No. |
| Robert J. Fileccia, Esq.: | He – he's not even in the courthouse yet. … |
| Cornier: | Well, why hasn't David Frey been in touch with me? … I know nothing about this. Nothing. I know nothing. |
| Robert J. Fileccia, Esq.: | And they didn't give you any heads up? |
| Cornier: | Nothing. |
| Robert J. Fileccia, Esq.: | Nothing at all. |
| Cornier: | No. … |
| Robert J. Fileccia, Esq.: | And in the last two and a half weeks no one called you? |
| Cornier: | No one has called me. |

145

| Robert J. Fileccia, Esq.: | When was the last time you spoke to him?  Maybe that helps. |
| Cornier: | When was the last time I saw you? |
| Robert J. Fileccia, Esq.: | Oh, in DMV.  That's a year and a half ago. |
| Cornier: | That's the last time. |

634.    On February 22, 2007, prosecution witness Alistair Abnernethy gave a similar account to the Plaintiffs' private investigator:

| Private Investigator: | Hello, Mr. Abernethy? |
| Abernathy: | Yes. |
| Private Investigator: | I have a subpoena to testify for the case coming up next week. |
| Abernethy: | I refuse to accept that, sir. ... |
| Private Investigator: | Well, this is for the criminal court. |
| Abernethy: | How do I know it's for the criminal court?  Put it through the DA and the DA can sent it to me. ... |
| Private Investigator: | Didn't the DA's office call you?  It's on for trial. |
| Abernethy: | Nobody's called me. |
| Private Investigator: | Nobody's called you? |
| Abernethy: | Nobody's called me yet.  Give me this. |
| Private Investigator: | Okay. |
| Abernethy: | I'm gonna talk to the DA. |
| Private Investigator: | Yeah, give the DA a call. |

635.    On February 23, 2007, Plaintiff Robert J. Fileccia, Esq. and criminal defense lawyer Gary G. Becker, Esq. bombarded Judge Collini with the following meritorious motions that cornered the prosecutors:

   a)  Robert J. Fileccia, Esq. asked for and received permission to move to disqualify ADA Frey because of his theft of the Plaintiffs' mail which was scheduled to be heard on Tuesday, February 27, 2007.  [Tr. 2/23/07 at 22, 24.]

   b)  Robert J. Fileccia, Esq. asked for and received permission to move to disqualify

146

ADA Frey because he unlawfully instructed witnesses to conceal and destroy their automobiles in violation of standing court orders and the Plaintiffs' Fourth Amendment constitutional rights:

Robert Fileccia: We've never received 52 different classifications of exculpatory evidence that I'll present to your Honor on Monday … I'm prepared to testify under oath that we received nothing in reference to the exculpatory evidence in this case. That's why I subpoenaed witnesses as well on these issues that will testify that the prosecutors told them not to make their cars available, even after Judge Rienzi made an order to make their cars available.

Judge Collini: We'll talk about that, I guess, on Monday or Tuesday.

[ Tr. 2/23/07 at 32-34.]

c) Gary G. Becker, Esq. asked for and received permission to file a speedy trial motion to dismiss the indictment because of ADA Frey's 5-year delay in bringing the case to trial in an effort to escape the criminal five year statute of limitations for crimes he committed.  Judge Collini admitted that the Car Indictment was "1801 days old today" and said, "You can submit it."  [Tr. 2/26/07 at 12-14.]

d) Gary G. Becker, Esq. asked for and received permission to file a motion to re-inspect the grand jury minutes and dismiss the indictment for ADA Frey's willful failure to charge the grand jury with the Plaintiffs' garageman's lien defense to the fraudulent accusations.  Judge Collini said "Put it in writing tomorrow morning.  I will review it." [Tr. 2/26/07 at 21.]  Plaintiff Robert Fileccia, Esq. filed a comprehensive motion to dismiss the indictment on the morning of February 27, 2007.

e) Robert J. Fileccia, Esq. asked for and received an Order from Judge Collini directing ADA Varriale to surrender the People's motor vehicle inspection reports

that prosecutors had been hiding for five years.  As explained above, the DA's motor vehicle inspection reports were entirely fabricated and would confirm the existence of a black operation.

| Robert Fileccia: | Number two is Judge Rienzi ordered the People to produce motor vehicle inspection reports by their experts on March 29, 2002, Judge.  They offered to provide us in their voluntary disclosure form, it's available to us.  We haven't received it in five years, your Honor. |
|---|---|
| Judge Collini: | Do you have those? |
| ADA Varriale: | No.  I don't have them with me.  If – |
| Judge Collini: | If they haven't been provided you will have them here in the morning. [ Tr. 2/26/07 at 36.] |

f) Robert J. Fileccia, Esq. and Gary G. Becker, Esq. asked for and received permission to challenge ADA Frey's fraudulent bill of particulars that was designed to surreptitiously enable prosecutors to constructively amend the indictment. [Tr. 2/26/07 at 15-24.]

636. As a result of the foregoing, Judge Collini initiated an off-the-record plea negotiation as an emergency containment method to protect his prosecutors. See Tr. 2/26/07 at 25, 26.

637. On February 27, 2007, the Car Indictment was dismissed in favor of the accused notwithstanding several more corrupt attempts by prosecutors and Judge Collini to pervert and obfuscate the record.

| Judge Collini: | Well, we've had now at least an hour of discussion.  It's my understanding we're either on the cusp of a disposition or we actually have a disposition.  Maybe I could be enlightened, Mr. Becker? |
|---|---|
| Gary G. Becker Esq.: | Your Honor, I think that we have a disposition and we are prepared to proceed to effectuate it.  My understanding is that the People are prepared to dismiss in its entirety indictment number – |

| | |
|---|---|
| Judge Collini: | Why don't I let the People put their disposition on the record? |
| ADA Varriale: | On 23/04 [Tax Indictment], the offer is a plea to count 4 which is failing to file against CPA Motor Cars Incorporated. Based on that plea, the People are willing to dismiss 62/02 [Car Indictment] against Robert and Richard Fileccia. |
| Judge Collini: | And the balance of the counts in the other indictment. |
| ADA Varriale: | Yes. |
| ADA Mattei: | Yes. |
| Judge Collini: | Is this acceptable? |
| Gary G. Becker, Esq.: | It might sound trifling, but this is a little – let me say this, the defendants have agreed that they will – that the corporation will enter a plea to count four of indictment 23/04. |
| | The People have agreed to dismiss indictment number 62/02. **From the defendants perspective one is not a quid pro quo. It is all happening right now, nothing is being consolidated.** |
| | [Tr. 2/27/07 at 2,3.] |

***

| | |
|---|---|
| Robert J. Fileccia, Esq: | **My understanding was, I want to make this clear on the record, that there would be no misunderstanding that the disposition of the two indictments, 23/04 and 62/02 was entirely separate.** |
| Judge Collini: | **They are separate.** |
| | [Tr. 2/27/07 at 16,17.] |

638.    Plaintiff Robert Fileccia and Gary Becker repeatedly corrected the record and reinforced the Plaintiffs' favorable termination.

639.    Plaintiff Richard Fileccia did <u>not</u> compromise with prosecutors. Gary Becker clearly and unambiguously stated that the outright dismissal of the Car Indictment (No. 62/2002) was <u>not</u> in exchange for CPA's corporate plea in the tax case. Becker said that it is "not a quid pro quo" and "nothing is being consolidated."

| | |
|---|---|
| Gary G. Becker, Esq.: | The People have agreed to dismiss indictment number 62/2002. **From the defendant's perpective one is not a** |

149

**quid pro quo.  It is all happening right now, nothing is being consolidated.** [Tr. 2/27/07 at 3.]

640.   Prosecutors did <u>not</u> oppose Gary Becker's declaration.

641.   Plaintiff Robert J. Fileccia, Esq. did <u>not</u> compromise with prosecutors.  Robert Fileccia clearly and unambiguously stated that the outright dismissal of the Car Indictment (No. 62/2002) was "entirely separate" from CPA's plea in the tax case (No. 23/2004).

| | |
|---|---|
| Robert J. Fileccia, Esq.: | **I want to make this clear on the record so that there would be no misunderstanding that the disposition of the two indictments, 23/04 and 62/02 was entirely separate.** |
| Justice Collini: | **They are separate.** [Tr. 2/27/07 at 1617.] |

642.   Prosecutors did <u>not</u> oppose Robert Fileccia who had the <u>last</u> word on the record.

643.   Judge Collini confirmed that the dismissal of the indictments were "entirely separate."

644.   Prosecutors did <u>not</u> oppose Judge Collini's declaration.

645.   Furthermore it was legally and factually impossible for Plaintiff Robert J. Fileccia, Esq. to compromise with anyone because the tax indictment, as it pertained to him, was already dismissed on February 7, 2007, almost three weeks *before* the dismissal of the Car Indictment. There was nothing to consolidate.

646.   Furthermore, the Plaintiffs' Certificates of Disposition certified by the Richmond County Supreme Court state:

> "THE ABOVE MENTIONED DISMISSAL IS A TERMINATION OF THE CRIMINAL ACTION IN FAVOR OF THE ACCUSED."
> [Emphasis in the original.]

647.   Moreover, the record evidence indicates the Plaintiffs repeatedly refused to plea bargain with prosecutors <u>and</u> the Court, repeatedly proclaimed their innocence, and repeatedly

demanded a trial.

648.    In a decision rendered by State Supreme Court Judge Rienzi on October 6, 2005, the Court admitted that the Plaintiffs "**refused to even consider**" his suggestion of an adjournment in contemplation of dismissal of the Car Indictment (62/2002):

> "However, in the spring of 2005, it became apparent that the indictments would not be resolved absent further litigation, as defendants **refused to even consider** the court's suggestion of an Adjournment in Contemplation of Dismissal (ACD) with some restitution in the car case, and misdemeanor pleas and non jail sentences in the tax case."

649.    The glaring fact that the Plaintiffs refused the Court's suggestion of an ACD in exchange for the dismissal of 313 combined criminal counts is incontrovertible evidence of the Plaintiffs' innocence.

650.    On January 31, 2007, during Plaintiff Robert J. Fileccia, Esq.'s tax trial, ADA Varriale offered him the following consolidated plea bargain to end both indictments:

| | |
|---|---|
| ADA Varriale: | "Consolidate the indictments and have him take one misdemeanor to cover both indictments." [Tr. 1/31/07 at 52] … |
| Judge Collini: | The only possibility would be a misdemeanor with a conditional discharge. You are talking about an A misdemeanor or a B? |
| ADA Varriale: | An A or B. |
| Judge Collini: | Mr. Shulman (standby counsel), why don't you talk to the defendant about this for a few minutes? |
| Robert Fileccia: | **It is not necessary. … We will go to trial.** |
| Judge Collini: | I want the record to say there were these discussions, what your liability was, what the potential situation was and you decided not to do it. |
| Robert Fileccia: | I think the Court said graciously was the fact … that in light of where I am sitting without counsel, I had to consider it and you said you would not ... you would have me say that I committed a crime and I think that is the primary issue, **and I did not, so we have to go to trial.** |
| Judge Collini: | That is the situation. **If you are not guilty, we are going to trial.** Then I don't think there is any further discussion. (Tr. 1/31/07 at 55, 56). |

151

651.  Plaintiff Robert J. Fileccia, Esq. refused to plea bargain, proclaimed his innocence, and demanded a trial.

652.  The dismissal of the Car Indictment was <u>not</u> inconsistent with the Plaintiffs' innocence.

653.  State Supreme Court Judge Robert Collini abandoned his role as an impartial magistrate and became the prosecutor.

654.  Judge Collini's serious judicial misconduct was motivated by the Court's bad faith and was undertaken to irreparably prejudice the Plaintiffs and deny them access to the Courts.

655.  In light of the fundamental distortion of the judicial process involved in this case, the Plaintiffs are entitled to relief under 42 USC §1983.

## MUNICIPAL LIABILITY
## MONELL V. DEP'T OF SOCIAL SERVS., 436 U.S. 658 (1977)

656.  Defendant DA Murphy is being sued in his official capacity as a manager of the Richmond County District Attorney's Office and policymaker for the City of New York.

657.  On March 18, 2002, DA Murphy signed the Plaintiffs' 309-Count Car Indictment and a "SPECIAL INFORMATION" that states:

> "I, WILLIAM MURPHY, District Attorney of the County of Richmond, City and State of New York, pursuante to CPL §200.65 do hereby state that I have reviewed the substance of the evidence presented to the Grand Jury and concur in the judgment of the charge of Enterprise Corruption (PL § 460.20) is consistent with the legislative findings contained in PL Art. 460."

Dated: Staten Island, New York
   March 18, 2002

*William Murphy*
WILLIAM L. MURPHY
District Attorney
Richmond County

658.  DA  Murphy's  signature  on  the  309-Count  Car  Indictment  <u>and</u>  SPECIAL

INFORMATION is irrefutable evidence of his personal review of the fabricated evidence, perjured testimony and deliberately misleading presentation before the grand jury.

659.    DA Murphy commanded, condoned, approved and ratified his Assistant District Attorneys' criminal and unconstitutional conduct, the Plaintiffs' seizure and malicious continuing seizure without probable or reasonable cause, and failed to supervise his subordinates with deliberate indifference for the Plaintiffs' constitutional rights.

660.    Defendant DA Donovan is also being sued in his official capacity as a manager of the Richmond County District Attorney's Office and policymaker for the City of New York.

661.    As a manager of the Staten Island District Attorney's Office, DA Donovan consciously chose to ignore his subordinates' unconstitutional acts and omissions and intentionally failed to remedy them.

662.    The Plaintiffs sent DA Donovan at least thirty five (35) different letters by certified mail, federal express, or hand delivered them to his office, which informed him of the unconstitutional acts and omissions of his prosecutors and law enforcement personnel.

663.    The letters were written to DA Donovan, Judge Leonard Rienzi, or his Assistant District Attorneys, with copies to the other parties and Supreme Court file. The Plaintiffs' respectfully incorporate by reference the following correspondence that are part of the official Court file in Indictment Nos. 62/2002 and 23/2004:

a)  1/2/04: Plaintiff to ADA Frey, cc DA Donovan;
b)  1/5/04: Plaintiff to DA Donovan;
c)  1/8/04: Plaintiff to Judge Rienzi, cc DA Donovan;
d)  5/19/04: Plaintiff to DA Donovan;
e)  6/2/04: Plaintiff to DA Donovan;
f)  6/22/04: Plaintiff to Judge Rienzi, cc DA Donovan;

g) 6/22/04: Plaintiff to Judge Rienzi and Judge Minardo, cc DA Donovan;

h) 7/13/04: Plaintiff to DA Donovan;

i) 7/14/04: Plaintiff to Judge Rienzi, cc DA Donovan;

j) 8/2/04: Plaintiff to ADA Frey, cc DA Donovan;

k) 8/3/04: ADA Frey to Plaintiff, cc DA Donovan;

l) 8/13/04: Plaintiff to Judge Rienzi, cc DA Donovan;

m) 8/23/04: Plaintiff to ADA Frey, cc DA Donovan;

n) 8/31/04: Plaintiff to Judge Rienzi, cc DA Donovan;

o) 9/8/04: Plaintiff to Judge Rienzi, cc DA Donovan;

p) 9/22/04: Plaintiff to Judge Rienzi, cc DA Donovan;

q) 9/22/04: Plaintiff to Judge Rienzi, cc DA Donovan;

r) 9/28/04: Plaintiff to Judge Rienzi, cc DA Donovan;

s) 10/18/04: Plaintiff to Judge Rienzi, cc DA Donovan;

t) 10/29/04: Plaintiff to ADA McGee, cc DA Donovan;

u) 1/6/05: Plaintiff to Judge Rienzi, cc DA Donovan;

v) 1/17/05: Plaintiff to ADA Frey, cc DA Donovan;

w) 1/18/05: ADA Frey to Plaintiff, cc DA Donovan;

x) 5/18/05: Judge Rienzi to ADA Mattei, cc DA Donovan;

y) 6/2/05: Plaintiff to Judge Rienzi, cc DA Donovan;

z) 6/6/05: Plaintiff to DA Donovan;

aa) 6/6/05: Plaintiff to Judge Rienzi, cc DA Donovan;

bb) 6/23/05: Benjamin Brafman, Esq. to DA Donovan;

cc) 7/5/05: DA Donovan to Benjamin Brafman, Esq., cc Plaintiff;

dd) 7/11/05: Plaintiff to Judge Rienzi, cc DA Donovan;

ee) 7/21/05: ADA Frey to Judge Rienzi, cc DA Donovan;

ff) 8/15/05: Plaintiff to Judge Rienzi, cc DA Donovan;

gg) 12/19/05: Plaintiff to Judge Rienzi, cc DA Donovan;

hh) 12/21/05: Plaintiff to Judge Rienzi, cc DA Donovan;

ii) 3/10/06: Plaintiff to ADA Mattei, cc DA Donovan.

664. For example,

a) Plaintiff Robert J. Fileccia, Esq.'s January 17, 2005 certified mail letter to ADA Frey

with copy to DA Donovan informed The City policymaker that ADA Frey was stealing United States Mail addressed to Plaintiffs and rerouting it to the District Attorney's Office.  DA Donovan consciously ignored ADA Frey's criminal activity and unconstitutional conduct with deliberate indifference for the Plaintiffs' constitutional rights;

b) Plaintiff Robert J. Fileccia, Esq.'s December 19, 2005 certified mail letter to Judge Rienzi with copy to DA Donovan informed The City policymaker that ADA Frey was using the United States Postal Service as a Scheme to defraud the Plaintiffs during motion practice in violation of 18 USCA §1341.  Robert Fileccia's letter states in pertinent part:

> "Dear Justice Rienzi,
>
> Earlier today, I received a 3-page affirmation dated December 14, 2005 signed by Assistant DA Karen Varriale which was mailed to me on December 16, 2005.  The People's answer, however, is believed to be 27 pages long, which was neither faxed nor mailed to me.  The People's manila envelope is post marked December 16, 2005 with sixty (60) cents postage.



> United States Post Office Officials have confirmed that Karen Varriale's 3-page affirmation and 11½ x 14½ manila envelope weigh 1.51 ounces and

155

costs exactly sixty (60) cents to mail. Seven pages weigh 2.21 ounces and costs 83 cents to mail, 13 pages weigh 3.10 ounces and costs $1.06 to mail, 19 pages weigh 4.10 ounces and costs $1.29 to mail, and 27 pages weigh 5.41 ounces and costs $1.52 to mail. [US Post Office Triner Scale Model TS-30.] **Therefore, the People did not mail me the entire answer and used the United States Post Office to perpetrate a fraud in these proceedings**. Furthermore, the return address on the manila envelope clearly states "ADA Frey" even though Karen Varriale ostensibly prepared the affirmation.



Respectfully submitted,

Robert J. Fileccia"

665. The Plaintiffs' other letters informed DA Donovan of, *inter alia*, his prosecutors' concealment and destruction of exculpatory evidence, fabrication of evidence, and the continuing malicious prosecution of the Plaintiffs.

666. DA Donovan failed to act or respond to all of the Plaintiffs' letters and repeated complaints of civil rights violations evidencing a seared conscience and deliberate indifference for their constitutional rights. DA Donovan turned a blind eye to his officers' habitual criminal and unconstitutional acts and omissions.

THE CITY, BY AND THROUGH ITS POLICYMAKER DA DONOVAN, ADOPTED AN UNCONSTITUTIONAL POLICY AND CUSTOM

667.   In a letter dated July 5, 2005, DA Donovan informed the Plaintiffs of his personal policy and custom not to intervene or otherwise discuss any aspect of an ongoing criminal case with defense counsel regardless of the unconstitutional acts or omissions of his assistants or law enforcement personnel. DA Donovan's letter states in pertinent part,

> "Since taking office on January 1, 2004, I have made it a policy not to speak personally to defense counsel regarding pending cases. I am familiar with the above said cases and see no reason to deviate from my policy in this instance."

668.   DA Donovan's July 5, 2005 letter is prima facie evidence of an unconstitutional policy and custom that he adopted, and knew – with reasonable certainty – would result in anguish for innocent United States Citizens and significant violations of their constitutional rights.

669.   The City, by and through its policymaker DA Donovan, evinced deliberate indifference for the Plaintiffs' constitutional rights throughout the criminal proceedings and thereafter.

670.   The City's unconstitutional policies and customs were (a) deliberately or recklessly indifferent to the Plaintiffs' constitutional rights; and (b) deliberately or recklessly indifferent to the issue of whether innocent people were being convicted of crimes.

671.   The City's municipal liability here is premised upon, among other things, their failure to adopt proper and reasonable policies and practices in the face of an obvious need to do so.

672.   DA Donovan's conduct operated, *inter alia*, to deprive Plaintiffs of important and well established constitutional rights including their Fourth Amendment right against unwarranted searches and seizures; right to be free from malicious prosecution; right to a fair trial; and right to freedom from the deprivation of liberty without due process of law.

### THE CITY, BY AND THROUGH ITS POLICYMAKER DA DONOVAN, FAILED TO ADEQUATELY TRAIN AND SUPERVISE HIS ASSISTANT DISTRICT ATTORNEYS, EMPLOYEES, AND LAW ENFORCEMENT PERSONNEL

673. The City, by and through its policymaker DA Donovan, was grossly negligent in managing and supervising his assistant district attorneys, employees, and law enforcement personnel who caused and procured the Plaintiffs' unlawful seizure and malicious prosecution without probable or reasonable cause.

674. The City, by and through its policymaker DA Donovan, failed to adequately train and supervise his assistant district attorneys, employees, and law enforcement personnel relating to:

   a) their obligation to refrain from fabricating evidence;

   b) their obligation to avoid the use of fabricated evidence;

   c) their obligation to avoid the use of perjured testimony;

   d) their obligation to refrain from suborning perjury;

   e) their obligation to disclose exculpatory evidence;

   f) their obligation to refrain from destroying exculpatory evidence;

   g) their obligation to disclose Brady material;

   h) their obligation to disclose Rosario material;

   i) their obligation to refrain from constructively amending indictments;

   j) their obligation to avoid framing innocent US citizens;

   k) their obligation to avoid accepting bribes or other forms of compensation in return for convicting innocent US citizens;

675. The City, by and through its policymaker DA Donovan, knew to a moral certainty that his ADAs, employees, and law enforcement personnel would confront the particular

situations described in (a) through (j) above.

676.  The City, by and through its policymaker DA Donovan knew the situations described in (a) through (j) above presents the ADAs, employees, and law enforcement personnel with a difficult choice of the sort that training or supervision would make less difficult or that there is a history of employees mishandling the situation.

677.  The City, by and through its policymaker DA Donovan, knew that the wrong choice by the ADAs, employees, and law enforcement personnel frequently causes constitutional deprivations.

### THE CITY, BY AND THROUGH ITS POLICYMAKER NYPD COMMISSIONER RAYMOND KELLY, FAILED TO ADEQUATELY TRAIN AND SUPERVISE HIS POLICE OFFICERS

678.  The City, by and through its policymaker NYPD Police Commissioner Raymond Kelly, was grossly negligent in managing and supervising NYPD Detective Georgette Romagnano, Lieutenant Michael Paccione, Sergeant Botta and other police officers who caused and procured the Plaintiffs' unlawful seizure and malicious prosecution without probable or reasonable cause.

679.  The City, by and through its policymaker Raymond Kelly, failed to adequately train and supervise his police officers relating to:

  a)  their obligation to refrain from fabricating evidence;

  b)  their obligation to avoid the use of fabricated evidence;

  c)  their obligation to refrain from committing perjury;

  d)  their obligation to avoid the use of perjured testimony;

  e)  their obligation to refrain from bribing witnesses to testify falsely before a grand jury;

f) their obligation to refrain from destroying exculpatory evidence;

g) their obligation to disclose exculpatory evidence;

h) their obligation to disclose Brady material;

i) their obligation to avoid framing innocent US citizens;

j) their obligation to refrain from obtaining search warrants and arrest warrants without probable cause, reasonable cause, or arguable probable cause;

k) their obligation to refrain from executing and conducting warrantless searches and seizures;

l) their obligation to avoid accepting bribes or other form of compensation in return for convicting innocent US citizens.

680. The City, by and through its policymaker Raymond Kelly, knew to a moral certainty that his police officers would confront the particular situations described in (a) through (l) above.

681. The City, by and through its policymaker Raymond Kelly, knew the situations described in (a) through (l) above presents the police officers with a difficult choice of the sort that training or supervision would make less difficult or that there is a history of employees mishandling the situation.

682. The City, by and through its policymaker Raymond Kelly, knew that the wrong choice by the police officers frequently causes constitutional deprivations.

**THE CITY, BY AND THROUGH ITS POLICYMAKER NYC COMPTROLLER WILLIAM THOMPSON, FAILED TO ADEQUATELY TRAIN AND SUPERVISE HIS EMPLOYEES**

683. The City, by and through its policymaker NYC Comptroller William Thompson, was grossly negligent in managing and supervising his claim examiners and employees—

Aaronson, Howe, Bryant, and Samuel—who violated the Plaintiffs' constitutional right of access to the courts.

684. The City, by and through its policymaker NYC Comptroller William Thompson, failed to adequately train and supervise his claim examiners and employees relating to:

    a) their obligation to refrain from issuing ghost claim numbers;

    b) their obligation to refrain from obstructing Plaintiffs' right of access to the courts;

    c) their obligation to refrain from disallowing a claim without reasonable cause;

    d) their obligation to refrain from purposely delaying a claim;

    e) their obligation to refrain from accepting bribes or other form of compensation in return obstructing the Plaintiffs' meritorious State claims;

    f) their obligation to responsibly settle legitimate claims against The City.

685. The City, by and through its policymaker NYC Comptroller William Thompson, knew to a moral certainty that his claim examiners and employees would confront the particular situations described in (a) through (f) above.

686. The City, by and through its policymaker NYC Comptroller William Thompson, knew the situations described in (a) through (f) above presents his claim examiners and employees with a difficult choice of the sort that training or supervision would make less difficult or that there is a history of employees mishandling the situation.

687. The City, by and through its policymaker NYC Comptroller William Thompson, knew that the wrong choice by the claim examiners and employees frequently causes constitutional deprivations.

## FIRST CAUSE OF ACTION:
## MAKING FALSE PUBLIC STATEMENT IN VIOLATION OF
## 42 USC §1983

(Against DA Murphy, DA Lehr, and DA Donovan in their individual capacities.)

688.    Plaintiffs incorporate paragraphs 1-687 above.

689.    DA Murphy, DA Lehr, and DA Donovan are "person" as that term is used in the text of 42 USC §1983.

690.    Beginning on March 20, 2002, DA Murphy, DA Lehr, and DA Donovan made various false public statements, including the 'EVIL TWIN' press release, concerning their purported investigation, indictment and arrest of the Plaintiffs.

691.    DA Murphy, DA Lehr, and DA Donovan made their respective false public statements under color of law.

692.    In their public statements, including the Evil Twin press release, Murphy and Lehr falsely stated, among other things, that:

a)  The Plaintiffs stole cars;

b)  The Plaintiff stole cash from their service station customers;

c)  The Plaintiffs charged for repairs not done;

d)  The Plaintiffs charged for parts not replaced and repairs done incorrectly;

e)  The Plaintiff victimized more than 100 people;

f)  The Plaintiff would make up things that weren't wrong;

g)  Plaintiff Robert Fileccia violated his oath as an attorney by deceiving people, courts, or municipalities;

h)  Plaintiffs defrauded their clients; and

i)  Plaintiffs were guilty of tax evasion.

693.    DA Murphy, DA Lehr, and DA Donovan's false statements, including the 'EVIL TWIN' press release, were published through the local and national media conveying these false statements to an audience of millions of people.

694.    DA Murphy, DA Lehr, and DA Donovan's false statements, including the 'EVIL TWIN' press release, were intended to inflame the Staten Island community and jury pool against the Plaintiffs and to compromise the fairness of subsequent judicial proceedings.

695.    DA Murphy, DA Lehr, and DA Donovan's actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

696.    As a result of DA Murphy, DA Lehr, and DA Donovan's false public statements, Plaintiffs were seized, maliciously prosecuted, and deprived of their rights under the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.

697.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

698.    As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## SECOND CAUSE OF ACTION:
## MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
## 42 USC §1983

(Against ADA Frey in his individual capacity.)

699.    Plaintiffs incorporate paragraphs 1- 698 above.

700.   ADA Frey is a "person" as that term is used in the text of 42 USC §1983.

701.   Under color of law, ADA Frey, acting individually and in concert with other Defendants, initiated and continued the Plaintiffs' criminal prosecution on charges of, *inter alia*, Enterprise Corruption.

702.   There was no probable cause for the Plaintiffs' criminal prosecution.

703.   ADA Frey's actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

704.   As a result of this wrongful prosecution, Plaintiffs were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

705.   As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

706.   As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## THIRD CAUSE OF ACTION:
## MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
## 42 USC §1983

### (Against ADA Varriale, ADA Mattei, Paralegal Watts, and John/Jane Doe Assistant District Attorneys in their individual capacities.)

707.   Plaintiffs incorporate paragraphs 1- 706 above.

708.   ADA Varriale, ADA Mattei, Paralegal Watts, and John/Jane Doe Assistant District Attorneys are "persons" as that term is used in the text of 42 USC §1983.

709.   Under color of law, ADA Varriale, ADA Mattei, Paralegal Watts, and John/Jane Doe

Assistant District Attorneys, acting individually and in concert, <u>continued</u> the Plaintiffs' criminal prosecution on charges of, *inter alia*, Larceny.

710.    There was no probable cause for the Plaintiffs' criminal prosecution.

711.    ADA Varriale, ADA Mattei, Paralegal Watts, and John/Jane Doe Assistant District Attorneys' actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

712.    As a result of this wrongful prosecution, Plaintiffs were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

713.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

714.    As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## FOURTH CAUSE OF ACTION:
## MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF 42 USC §1983

(Against Romagnano, Paccione, and Botta in their individual and official capacities.)

715.    Plaintiffs incorporate paragraphs 1- 714 above.

716.    NYPD Police Officers Romagnano, Paccione, and Botta are "persons", as that term is used in the text of 42 USC §1983.

717.    Under color of law, NYPD Police Officers Romagnano, Paccione, and Botta acting

individually and in concert, initiated and continued the Plaintiffs' criminal prosecution on charges of, *inter alia*, Larceny.

718. There was no probable cause for the Plaintiffs' criminal prosecution.

719. NYPD Police Officers Romagnano, Paccione, and Botta's actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

720. As a result of this wrongful prosecution, Plaintiffs were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

721. As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

722. As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### FIFTH CAUSE OF ACTION:
### MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
### 42 USC §1983

(Against Gentile and Viola in their individual and official capacities.)

723. Plaintiffs incorporate paragraphs 1-722 above.

724. NYPD Police Officers Gentile and Viola are "persons", as that term is used in the text of 42 USC §1983.

725. Under color of law, NYPD Police Officers Gentile and Viola acting individually and in concert, continued the Plaintiffs' criminal prosecution on charges of, *inter alia*, Larceny.

726. There was no probable cause for the Plaintiffs' criminal prosecution.

727. NYPD Police Officers Gentile and Viola's actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

728. As a result of this wrongful prosecution, Plaintiffs were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

729. As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

730. As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### SIXTH CAUSE OF ACTION:
### MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF 42 USC §1983

(Against Filippides, Forde, and Sandler in their individual capacities.)

731. Plaintiffs incorporate paragraphs 1- 730 above.

732. Filippides, Forde, and Sandler are "persons" as that term is used in the text of 42 USC §1983.

733. Filippides, Forde, and Sandler are being sued in their individual capacities.

734. Under color of law, Filippides, Forde, and Sandler acting individually and in concert, initiated and continued the Plaintiffs' criminal prosecution on charges of, *inter alia*, Larceny.

735.   There was no probable cause for the Plaintiffs' criminal prosecution.

736.   Filippides, Forde, and Sandler's actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

737.   As a result of this wrongful prosecution, Plaintiffs were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

738.   As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

739.   As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### SEVENTH CAUSE OF ACTION:
### MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
### 42 USC §1983

(Against Knoll and Wilson in their individual capacities.)

740.   Plaintiffs incorporate paragraphs 1- 739 above.

741.   Knoll and Wilson are "persons" as that term is used in the text of 42 USC §1983.

742.   Knoll and Wilson are being sued in their individual capacities.

743.   Under color of law, Knoll and Wilson, acting individually and in concert with others, continued the Plaintiffs' criminal prosecution on charges of, *inter alia*, Larceny.

744.   There was no probable cause for the Plaintiffs' criminal prosecution.

745.   Knoll and Wilson's actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

168

746.    As a result of this wrongful prosecution, Plaintiffs were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

747.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

748.    As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### EIGHTH CAUSE OF ACTION:
### MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
### 42 USC §1983

(Against Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. in their individual and official capacities.)

749.    Plaintiffs incorporate paragraphs 1- 748 above.

750.    Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. are "persons" as that term is used in the text of 42 USC §1983.

751.    Under color of law, Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. acting individually and in concert, initiated and continued the Plaintiffs' criminal prosecution on charges of, *inter alia*, Larceny.

752.    There was no probable cause for the Plaintiffs' criminal prosecution.

753.    Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co.'s actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

169

754.   As a result of this wrongful prosecution, Plaintiffs were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

755.   As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

756.   As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## NINTH CAUSE OF ACTION:
## MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
## 42 USC §1983

(Against Brafman, Baker, Brafman & Ross, Brafman and Associates in their individual and official capacities.)

757.   Plaintiffs incorporate paragraphs 1- 756 above.

758.   Brafman, Baker, Brafman & Ross, Brafman and Associates are "persons" as that term is used in the text of 42 USC §1983.

759.   Under color of law, Brafman, Baker, Brafman & Ross, Brafman and Associates acting individually and in concert, continued the Plaintiffs' criminal prosecution on charges of, *inter alia*, Larceny.

760.   There was no probable cause for the Plaintiffs' criminal prosecution.

761.   Brafman, Baker, Brafman & Ross, Brafman and Associates actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

762.   As a result of this wrongful prosecution, Plaintiffs were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

763.   As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

764.   As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### TENTH CAUSE OF ACTION:
### MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF 42 USC §1983

(Against Shulman in his individual capacity.)

765.   Plaintiff incorporates paragraphs 1- 764 above.

766.   Shulman is a "person" as that term is used in the text of 42 USC §1983.

767.   Under color of law, Shulman acting individually and in concert with other Defendants, continued the Plaintiffs' criminal prosecution on charges of, *inter alia*, Larceny.

768.   There was no probable cause for the Plaintiffs' criminal prosecution.

769.   Shulman was malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

770.   As a result of this wrongful prosecution, Plaintiffs were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

771.   As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of

education, and irreparable harm to their reputation.

772.    As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### ELEVENTH CAUSE OF ACTION:
### MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
### 42 USC §1983

(Against Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins,
Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King,
Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Vazquez,
Diane Vines, and Walter Vines in their individual capacities.)

773.    Plaintiffs incorporate paragraphs 1- 772 above.

774.    Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Vazquez, Diane Vines, and Walter Vines are "persons" as that term is used in the text of 42 USC §1983.

775.    Under color of law, Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Vazquez, Diane Vines, and Walter Vines acting individually and in concert, initiated and continued the Plaintiffs' criminal prosecution on charges of, *inter alia*, Larceny.

776.    There was no probable cause for the Plaintiffs' criminal prosecution.

777.    Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George

Stapleton, Frank Stapleton, Vazquez, Diane Vines, and Walter Vines' actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

778. As a result of this wrongful prosecution, Plaintiffs were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

779. As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

780. As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## TWELFTH CAUSE OF ACTION:
## MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
## 42 USC §1983

(Against Tritto in her individual capacity.)

781. Plaintiffs incorporate paragraphs 1- 780 above.

782. Tritto is a "person" as that term is used in the text of 42 USC §1983.

783. Under color of law, Tritto acting individually and in concert with other Defendants, continued the Plaintiffs' criminal prosecution on charges of, *inter alia*, Larceny.

784. There was no probable cause for the Plaintiffs' criminal prosecution.

785. Tritto's actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

786. As a result of this wrongful prosecution, Plaintiffs were seized and deprived of their

rights under the Fourth and Fourteenth Amendments to the United States Constitution.

787.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

788.    As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## THIRTEENTH CAUSE OF ACTION:
## MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
## 42 USC §1983

(Against Hall and Hall & Hall LLP in their individual and official capacities.)

789.    Plaintiffs incorporate paragraphs 1-788 above.

790.    Hall and Hall & Hall LLP are "persons" as that term is used in the text of 42 USC §1983.

791.    Under color of law, Hall and Hall & Hall LLP, acting individually and in concert, continued the Plaintiffs' criminal prosecution on charges of, *inter alia*, Larceny.

792.    There was no probable cause for the Plaintiffs' criminal prosecution.

793.    Hall and Hall & Hall LLP's actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

794.    As a result of this wrongful prosecution, Plaintiffs were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

795.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of

education, and irreparable harm to their reputation.

796.  As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## FOURTEENTH CAUSE OF ACTION:
## MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
## 42 USC §1983

(Against SI Bank & Trust, Sovereign Bank, Sovereign Bancorp, Inc.,
Banco Santander, SI Bank & Trust Foundation, and The Staten Island
Foundation in their individual and official capacities.)

797.  Plaintiffs incorporate paragraphs 1-796 above.

798.  SI Bank & Trust, Sovereign Bank, Sovereign Bancorp, Inc., Banco Santander, SI Bank & Trust Foundation, and The Staten Island Foundation are "persons" as that term is used in the text of 42 USC §1983.

799.  Under color of law, SI Bank & Trust, Sovereign Bank, Sovereign Bancorp, Inc., Banco Santander, SI Bank & Trust Foundation, and The Staten Island Foundation, acting individually and in concert, continued the Plaintiffs' criminal prosecution on charges of, *inter alia*, Larceny.

800.  There was no probable cause for the Plaintiffs' criminal prosecution.

801.  SI Bank & Trust, Sovereign Bank, Sovereign Bancorp, Inc., Banco Santander, SI Bank & Trust Foundation, and The Staten Island Foundation's actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

802.  As a result of this wrongful prosecution, Plaintiffs were seized and deprived of their

rights under the Fourth and Fourteenth Amendments to the United States Constitution.

803.  As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

804.  As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## FIFTEENTH CAUSE OF ACTION:
## MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
## 42 USC §1983

(Against Stergious in her individual capacity.)

805.  Plaintiffs incorporate paragraphs 1- 804 above.

806.  Stergious is a "person" as that term is used in the text of 42 USC §1983.

807.  Stergious is being sued in the individual capacity.

808.  Under color of law, Stergious acting individually and in concert with other Defendants, continued the Plaintiffs' criminal prosecution on charges of, *inter alia*, Larceny.

809.  There was no probable cause for the Plaintiffs' criminal prosecution.

810.  Stergious' actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

811.  As a result of this wrongful prosecution, Plaintiffs were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

812.  As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of

education, and irreparable harm to their reputation.

813.   As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## SIXTEENTH CAUSE OF ACTION:
## MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
## 42 USC §1983

(Against Burns, Cutillo, Demizio, Loiacono, and Nicholson in their individual capacities.)

814.   Plaintiffs incorporate paragraphs 1- 813 above.

815.   Burns, Cutillo, Demizio, Loiacono, and Nicholson are "persons" as that term is used in the text of 42 USC §1983.

816.   Under color of law, Burns, Cutillo, Demizio, Loiacono, and Nicholson acting individually and in concert with others, initiated and continued the Plaintiffs' criminal prosecution on charges of, *inter alia*, Larceny.

817.   There was no probable cause for the Plaintiffs' criminal prosecution.

818.   Burns, Cutillo, Demizio, Loiacono, and Nicholson's actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

819.   As a result of this wrongful prosecution, Plaintiffs were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

820.   As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of

education, and irreparable harm to their reputation.

821.    As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## SEVENTEENTH CAUSE OF ACTION:
## MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF
## 42 USC §1983

(Against Demizio, Girod, Parks, Paulsen, Przybyszewski, Reiss, and
Williams in their individual capacities.)

822.    Plaintiffs incorporate paragraphs 1- 821 above.

823.    Demizio, Girod, Parks, Paulsen, Przybyszewski, Reiss, and Williams are "persons" as that term is used in the text of 42 USC §1983.

824.    Under color of law, Demizio, Girod, Parks, Paulsen, Przybyszewski, Reiss, and Williams acting individually and in concert, continued the Plaintiffs' criminal prosecution on charges of, *inter alia*, Larceny.

825.    There was no probable cause for the Plaintiffs' criminal prosecution.

826.    Demizio, Girod, Parks, Paulsen, Przybyszewski, Reiss, and Williams' actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

827.    As a result of this wrongful prosecution, Plaintiffs were seized and deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

828.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of

education, and irreparable harm to their reputation.

829.  As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## EIGHTEENTH CAUSE OF ACTION:
## CONCEALMENT AND DESTRUCTION OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against ADA Frey in his individual capacity.)

830.  Plaintiffs incorporate paragraphs 1- 829 above.

831.  ADA Frey is a "person" as that term is used in the text of 42 USC §1983.

832.  Under color of law, ADA Frey, acting individually and in concert with others, concealed and destroyed evidence of Plaintiffs' actual innocence.

833.  ADA Frey conspired to conceal, destroy and obfuscate evidence of Plaintiffs' innocence from the Plaintiffs, their attorneys, and the courts.

834.  ADA Frey knowingly and intentionally concealed and destroyed critical exculpatory evidence to which Plaintiffs were entitled under standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

835.  ADA Frey evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

836.  As a result of this Defendant's conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

837.  As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of

education, and irreparable harm to their reputation.

838.    As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## NINETEENTH CAUSE OF ACTION:
## CONCEALMENT AND DESTRUCTION OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against ADA Varriale, ADA Mattei, Paralegal Watts, and John/Jane Doe Assistant District Attorneys in their individual capacities.)

839.    Plaintiffs incorporate paragraphs 1- 838 above.

840.    ADA Varriale, ADA Mattei, Paralegal Watts, and John/Jane Doe Assistant District Attorneys are "persons" as that term is used in the text of 42 USC §1983.

841.    Under color of law, ADA Varriale, ADA Mattei, Paralegal Watts, and John/Jane Doe Assistant District Attorneys, acting individually and in concert, concealed and or destroyed evidence of Plaintiffs' actual innocence.

842.    ADA Varriale, ADA Mattei, Paralegal Watts, and John/Jane Doe Assistant District Attorneys conspired to conceal, destroy and obfuscate evidence of Plaintiffs' innocence from the Plaintiffs, their attorneys, and the courts.

843.    ADA Varriale, ADA Mattei, Paralegal Watts, and John/Jane Doe Assistant District Attorneys knowingly and intentionally concealed and or destroyed critical exculpatory evidence to which Plaintiffs were entitled under standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

844.    ADA Varriale, ADA Mattei, Paralegal Watts, and John/Jane Doe Assistant District Attorneys evidenced a reckless and callous disregard for, and deliberate indifference to,

180

Plaintiffs' constitutional rights.

845.   As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

846.   As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

847.   As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## TWENTIETH CAUSE OF ACTION:
## CONCEALMENT AND DESTRUCTION OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against Romagnano, Paccione, Botta, Gentile, and Viola in their individual and official capacities.)

848.   Plaintiffs incorporate paragraphs 1- 847 above.

849.   Romagnano, Paccione, Botta, Gentile, and Viola are "persons" as that term is used in the text of 42 USC §1983.

850.   Under color of law, Romagnano, Paccione, Botta, Gentile, and Viola, acting individually and in concert, concealed and or destroyed evidence of Plaintiffs' actual innocence.

851.   Romagnano, Paccione, Botta, Gentile, and Viola conspired to conceal, destroy and obfuscate evidence of Plaintiffs' innocence from the Plaintiffs, their attorneys, and the courts.

852.   Romagnano, Paccione, Botta, Gentile, and Viola knowingly and intentionally concealed and or destroyed critical exculpatory evidence to which Plaintiffs were entitled under

standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

853.    Under color of law, Romagnano and Paccione, acting individually and in concert, abused their authority and positions as law enforcement officers to bribe, coerce, intimidate, or otherwise influence witnesses to conceal and or destroy exculpatory evidence to which Plaintiffs were entitled under standing orders, the Fourteenth Amendment to the United States Constitution, and New York law.

854.    Romagnano, Paccione, Botta, Gentile, and Viola evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

855.    As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

856.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

857.    As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## TWENTY-FIRST CAUSE OF ACTION:
### CONCEALMENT AND DESTRUCTION OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against Filippides, Forde, Knoll, Sandler, and Wilson in their individual capacities.)

858.    Plaintiffs incorporate paragraphs 1- 857 above.

859.    Filippides, Forde, Knoll, Sandler, and Wilson are "persons" as that term is used in the

text of 42 USC §1983.

860. Under color of law, Filippides, Forde, Knoll, Sandler, and Wilson, acting individually and in concert, concealed and or destroyed evidence of Plaintiffs' actual innocence.

861. Filippides, Forde, Knoll, Sandler, and Wilson conspired to conceal, destroy and obfuscate evidence of Plaintiffs' innocence from the Plaintiffs, their attorneys, and the courts.

862. Filippides, Forde, Knoll, Sandler, and Wilson knowingly and intentionally concealed and or destroyed critical exculpatory evidence to which Plaintiffs were entitled under standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

863. Filippides, Forde, Knoll, Sandler, and Wilson evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

864. As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

865. As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

866. As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## TWENTY-SECOND CAUSE OF ACTION:
## CONCEALMENT AND DESTRUCTION OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. in their individual and official capacities.)

867.  Plaintiffs incorporate paragraphs 1- 866 above.

868.  Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. are "persons" as that term is used in the text of 42 USC §1983.

869.  Under color of law, Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co., acting individually and in concert, concealed and or destroyed evidence of Plaintiffs' actual innocence.

870.  Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. conspired to conceal, destroy and obfuscate evidence of Plaintiffs' innocence from the Plaintiffs, their attorneys, and the courts.

871.  Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. knowingly and intentionally concealed and or destroyed critical exculpatory evidence to which Plaintiffs were entitled under standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

872.  Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

873.  As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

874.  As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

875.  As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with

defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### TWENTY-THIRD CAUSE OF ACTION:
### CONCEALMENT AND DESTRUCTION OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against Brafman, Baker, Brafman & Ross, Brafman and Associates in their individual and official capacities.)

876.   Plaintiffs incorporate paragraphs 1- 875 above.

877.   Brafman, Baker, Brafman & Ross, and Brafman and Associates are "persons" as that term is used in the text of 42 USC §1983.

878.   Under color of law, Brafman, Baker, Brafman & Ross, and Brafman and Associates, acting individually and in concert, concealed and or destroyed evidence of Plaintiffs' actual innocence.

879.   Brafman, Baker, Brafman & Ross, and Brafman and Associates conspired to conceal, destroy and obfuscate evidence of Plaintiffs' innocence from the Plaintiffs, their attorneys, and the courts.

880.   Brafman, Baker, Brafman & Ross, and Brafman and Associates knowingly and intentionally concealed and or destroyed critical exculpatory evidence to which Plaintiffs were entitled under standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

881.   Brafman, Baker, Brafman & Ross, and Brafman and Associates evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

882.   As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

883.   As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered

economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

884.    As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## TWENTY-FOURTH CAUSE OF ACTION:
## CONCEALMENT AND DESTRUCTION OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Tritto, Vazquez, Diane Vines, and Walter Vines in their individual capacities.)

885.    Plaintiffs incorporate paragraphs 1- 884 above.

886.    Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Tritto, Vazquez, Diane Vines, and Walter Vines are "persons" as that term is used in the text of 42 USC §1983.

887.    Under color of law, Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Tritto, Vazquez, Diane Vines, and Walter Vines, acting individually and in concert, concealed and or destroyed evidence of Plaintiffs' actual innocence.

888.    Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Tritto, Vazquez, Diane Vines, and Walter Vines conspired to

conceal, destroy and obfuscate evidence of Plaintiffs' innocence from the Plaintiffs, their attorneys, and the courts.

889. Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Tritto, Vazquez, Diane Vines, and Walter Vines knowingly and intentionally concealed and or destroyed critical exculpatory evidence to which Plaintiffs were entitled under standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

890. Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Tritto, Vazquez, Diane Vines, and Walter Vines evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

891. As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

892. As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

893. As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## TWENTY-FIFTH CAUSE OF ACTION:
## CONCEALMENT AND DESTRUCTION OF EVIDENCE IN VIOLATION

## OF 42 USC §1983

(Against Hall, Hall & Hall LLP, SI Bank & Trust, Sovereign Bank, Sovereign Bancorp, Inc., Banco Santander, SI Bank & Trust Foundation, and The Staten Island Foundation in their individual and official capacities.)

894.　Plaintiffs incorporate paragraphs 1- 893 above.

895.　Hall, Hall & Hall LLP, SI Bank & Trust, Sovereign Bank, Sovereign Bancorp, Inc., Banco Santander, SI Bank & Trust Foundation, and The Staten Island Foundation are "persons" as that term is used in the text of 42 USC §1983.

896.　Under color of law, Hall, Hall & Hall LLP, SI Bank & Trust, Sovereign Bank, Sovereign Bancorp, Inc., Banco Santander, SI Bank & Trust Foundation, and The Staten Island Foundation, acting individually and in concert, concealed and or destroyed evidence of Plaintiffs' actual innocence.

897.　Hall, Hall & Hall LLP, SI Bank & Trust, Sovereign Bank, Sovereign Bancorp, Inc., Banco Santander, SI Bank & Trust Foundation, and The Staten Island Foundation conspired to conceal, destroy and obfuscate evidence of Plaintiffs' innocence from the Plaintiffs, their attorneys, and the courts.

898.　Hall, Hall & Hall LLP, SI Bank & Trust, Sovereign Bank, Sovereign Bancorp, Inc., Banco Santander, SI Bank & Trust Foundation, and The Staten Island Foundation knowingly and intentionally concealed and or destroyed critical exculpatory evidence to which Plaintiffs were entitled under standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

899.　Hall, Hall & Hall LLP, SI Bank & Trust, Sovereign Bank, Sovereign Bancorp, Inc., Banco Santander, SI Bank & Trust Foundation, and The Staten Island Foundation evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs'

constitutional rights.

900.   As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

901.   As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

902.   As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## TWENTY-SIXTH CAUSE OF ACTION:
## CONCEALMENT AND DESTRUCTION OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against Stergious in her individual capacity.)

903.   Plaintiffs incorporate paragraphs 1- 902 above.

904.   Stergious is a "person" as that term is used in the text of 42 USC §1983.

905.   Under color of law, Stergious, acting individually and in concert with others, concealed and or destroyed evidence of Plaintiffs' actual innocence.

906.   Stergious conspired to conceal, destroy and obfuscate evidence of Plaintiffs' innocence from the Plaintiffs, their attorneys, and the courts.

907.   Stergious knowingly and intentionally concealed and or destroyed critical exculpatory evidence to which Plaintiffs were entitled under standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

908.   Stergious evidenced a reckless and callous disregard for, and deliberate indifference to,

189

Plaintiffs' constitutional rights.

909.   As a result of this Defendant's conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

910.   As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

911.   As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## TWENTY-SEVENTH CAUSE OF ACTION:
## CONCEALMENT AND DESTRUCTION OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against Burns, Cutillo, Demizio, Loiacono, and Nicholson in their individual capacities.)

912.   Plaintiffs incorporate paragraphs 1- 911 above.

913.   Burns, Cutillo, Demizio, Loiacono, and Nicholson are "persons" as that term is used in the text of 42 USC §1983.

914.   Under color of law, Burns, Cutillo, Demizio, Loiacono, and Nicholson, acting individually and in concert, concealed and or destroyed evidence of Plaintiffs' actual innocence.

915.   Burns, Cutillo, Demizio, Loiacono, and Nicholson conspired to conceal, destroy and obfuscate evidence of Plaintiffs' innocence from the Plaintiffs, their attorneys, and the courts.

916.   Burns, Cutillo, Demizio, Loiacono, and Nicholson knowingly and intentionally concealed

and or destroyed critical exculpatory evidence to which Plaintiffs were entitled under standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

917.  Burns, Cutillo, Demizio, Loiacono, and Nicholson evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

918.  As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

919.  As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

920.  As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## TWENTY-EIGHTH CAUSE OF ACTION:
## CONCEALMENT AND DESTRUCTION OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against Demizio, Girod, Parks, Paulsen, Przybyszewski, Reiss, and Williams in their individual capacities.)

921.  Plaintiffs incorporate paragraphs 1- 920 above.

922.  Demizio, Girod, Parks, Paulsen, Przybyszewski, Reiss, and Williams are "persons" as that term is used in the text of 42 USC §1983.

923.  Under color of law, Demizio, Girod, Parks, Paulsen, Przybyszewski, Reiss, and Williams, acting individually and in concert, concealed and or destroyed evidence of Plaintiffs' actual innocence.

924.    Demizio, Girod, Parks, Paulsen, Przybyszewski, Reiss, and Williams conspired to conceal, destroy and obfuscate evidence of Plaintiffs' innocence from the Plaintiffs, their attorneys, and the courts.

925.    Demizio, Girod, Parks, Paulsen, Przybyszewski, Reiss, and Williams knowingly and intentionally concealed and or destroyed critical exculpatory evidence to which Plaintiffs were entitled under standing court orders, the Fourteenth Amendment to the United States Constitution, and New York law.

926.    Demizio, Girod, Parks, Paulsen, Przybyszewski, Reiss, and Williams evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

927.    As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

928.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

929.    As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### TWENTY-NINTH CAUSE OF ACTION:
### FABRICATION OF FALSE EVIDENCE IN VIOLATION OF
### 42 USC §1983

(Against ADA Frey in his individual capacity.)

930.    Plaintiffs incorporate paragraphs 1- 929 above.

931.    ADA Frey is a "person" as that term is used in the text of 42 USC §1983.

932.    Acting under color of law, ADA Frey, individually and in concert with others, conspired to produce false and misleading evidence that he understood and agreed would be used to initiate and obtain the Plaintiffs' wrongful seizure.

933.    Acting under color of law, ADA Frey, individually and in concert with others, fabricated false and misleading evidence long *before* presentation to a grand jury, and during the investigatory stage of the proceeding.

934.    Acting under color of law, ADA Frey, individually and in concert with others, stole the Plaintiffs' mail to fabricate false evidence to initiate and instigate the Plaintiffs' wrongful seizure.

935.    Acting under color of law, ADA Frey manufactured false and misleading evidence that he understood and agreed would be used to obtain a search warrant for the Plaintiffs' residence and home office on February 25, 2002, March 19, 2002 and March 20, 2002.

936.    Under color of law, ADA Frey, acting individually and in concert with others, abused his authority and position as a law enforcement officer to bribe, coerce, intimidate, or otherwise influence witnesses to fabricate false evidence and testify falsely before a grand jury to obtain the Plaintiffs' wrongful seizure.

937.    ADA Frey evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

938.    As a result of this Defendant's conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

939.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of

education, and irreparable harm to their reputation.

940.   As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## THIRTIETH CAUSE OF ACTION:
## FABRICATION OF FALSE EVIDENCE IN VIOLATION OF
## 42 USC §1983

(Against Paralegal Watts in her individual capacity.)

941.   Plaintiffs incorporate paragraphs 1- 940 above.

942.   Paralegal Watts is a "person" as that term is used in the text of 42 USC §1983.

943.   Acting under color of law, Paralegal Watts, individually and in concert with ADA Frey and others, conspired to produce false and misleading evidence that she understood and agreed would be falsely misrepresented to obtain the Plaintiffs' wrongful seizure.

944.   Acting under color of law, Paralegal Watts, individually and in concert with others, fabricated false and misleading evidence long *before* presentation to a grand jury, and during the investigatory stage of the proceeding.

945.   Acting under color of law, Paralegal Watts, individually and in concert with others, stole the Plaintiffs' mail to fabricate false evidence to initiate and instigate the Plaintiffs' wrongful seizure.

946.   Acting under color of law, Paralegal Watts, individually and in concert with others, stole the Plaintiffs' mail to maliciously continue the Plaintiffs' seizure.

947.   Paralegal Watts evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

948.  As a result of this Defendant's conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

949.  As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

950.  As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### THIRTY-FIRST CAUSE OF ACTION: FABRICATION OF FALSE EVIDENCE IN VIOLATION OF 42 USC §1983

(Against Romagnano, Paccione, and Botta in their individual and official capacities.)

951.  Plaintiffs incorporate paragraphs 1- 950 above.

952.  Romagnano, Paccione, and Botta are "persons" as that term is used in the text of 42 USC §1983.

953.  Acting under color of law, Romagnano, Paccione, and Botta, individually and in concert, conspired to produce false and misleading evidence that they understood and agreed would be falsely misrepresented to obtain the Plaintiffs' wrongful seizure.

954.  Acting under color of law, Romagnano, Paccione, and Botta, individually and in concert, fabricated false and misleading evidence long *before* presentation to a grand jury, and during the investigatory stage of the proceeding.

955.  Acting under color of law, Romagnano produced false and misleading evidence that she

understood and agreed would be falsely misrepresented to unlawfully obtain a search warrant at the Plaintiffs' residence and home office on March 19, 2002 and March 20, 2002.

956.    Under color of law, Romagnano, Paccione, and Botta, acting individually and in concert, abused their authority and positions as law enforcement officers to bribe, coerce, intimidate, or otherwise influence witnesses to testify falsely before a grand jury and trial jury.

957.    Romagnano, Paccione, and Botta evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

958.    As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

959.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

960.    As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### THIRTY-SECOND CAUSE OF ACTION:
### FABRICATION OF FALSE EVIDENCE IN VIOLATION OF
### 42 USC §1983

(Against Filippides, Forde, and Sandler in their individual capacities.)

961.    Plaintiffs incorporate paragraphs 1- 960 above.

962.    Filippides, Forde, and Sandler are "persons" as that term is used in the text of 42 USC

§1983.

963.  Acting under color of law, Filippides, Forde, and Sandler, individually and in concert, conspired to produce false and misleading evidence that they understood and agreed would be falsely misrepresented to obtain the Plaintiffs' wrongful seizure.

964.  Acting under color of law, Filippides, Forde, and Sandler, individually and in concert, fabricated false and misleading evidence long *before* presentation to a grand jury, and during the investigatory stage of the proceeding.

965.  Acting under color of law, Filippides and Forde, individually and in concert with others, fabricated false and misleading evidence during the criminal proceedings to maliciously continue the Plaintiffs' seizure.

966.  Under color of law, Filippides, acting individually and in concert with others, abused his authority and position as a DMV Inspector and a lead member of the District Attorney's Prosecution Team to bribe, coerce, intimidate, or otherwise unlawfully influence witnesses to fabricate false evidence and or testify falsely before a grand jury.

967.  Filippides, Forde, and Sandler evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

968.  As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

969.  As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

970.  As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with

defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## THIRTY-THIRD CAUSE OF ACTION:
## FABRICATION OF FALSE EVIDENCE IN VIOLATION OF
## 42 USC §1983

(Against Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. in their individual and official capacities.)

971.  Plaintiffs incorporate paragraphs 1- 970 above.

972.  Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. are "persons" as that term is used in the text of 42 USC §1983.

973.  Acting under color of law, Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co., individually and in concert with others, conspired to produce false and misleading evidence that they understood and agreed would be falsely misrepresented to obtain the Plaintiffs' wrongful seizure.

974.  Acting under color of law, Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co., individually and in concert with others, fabricated false and misleading evidence long *before* presentation to a grand jury, and during the investigatory stage of the proceeding.

975.  Acting under color of law, Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co., individually and in concert with others, stole the Plaintiffs' mail to fabricate false evidence to initiate and instigate the Plaintiffs' wrongful seizure.

976.  Acting under color of law, Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co., individually and in concert with others, stole the Plaintiffs' mail to maliciously continue the Plaintiffs' seizure.

977.   Acting under color of law, Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. produced false and misleading evidence that they understood and agreed would be falsely misrepresented to obtain a search warrant at the Plaintiffs' residence and home office on March 19, 2002 and March 20, 2002.

978.   Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

979.   As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

980.   As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

981.   As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### THIRTY-FOURTH CAUSE OF ACTION:
### FABRICATION OF FALSE EVIDENCE IN VIOLATION OF
### 42 USC §1983

(Against Brafman, Baker, Brafman & Ross, Brafman and Associates and Shulman in their individual and official capacities.)

982.   Plaintiffs incorporate paragraphs 1- 981 above.

983.   Brafman, Baker, Brafman & Ross, Brafman and Associates, and Shulman are "persons" as that term is used in the text of 42 USC §1983.

199

984.    Acting under color of law, Brafman, Baker, Brafman & Ross, and Brafman and Associates, individually and in concert with others, conspired to produce false and misleading evidence that they understood and agreed would be falsely misrepresented to maliciously continue the Plaintiffs' wrongful seizure. For example, Brafman, Baker, Brafman & Ross, and Brafman and Associates falsely claimed in official court documents that the Plaintiffs' discharged them as defense counsel which provided Supreme Court Justice Leonard Rienzi the opportunity to corruptly issue a series of fraudulent decisions that concealed exculpatory evidence and denied Plaintiffs' their Fourth, Fifth, Sixth, and Fourteenth Amendment constitutional rights.

985.    Acting under color of law, Shulman, individually and in concert with others, conspired to produce false and misleading evidence that he understood and agreed would be falsely misrepresented to maliciously continue the Plaintiffs' wrongful seizure. For example, Shulman prepared false and misleading court documents designed to undermine Plaintiff Robert J. Fileccia, Esq.'s Sixth Amendment rights to counsel and a fair trial; that in turn maliciously continued Robert's seizure.

986.    Brafman, Baker, Brafman & Ross, Brafman and Associates, and Shulman evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

987.    As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

988.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

989.    As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding that was sustained by Defendants.

### THIRTY-FIFTH CAUSE OF ACTION: FABRICATION OF FALSE EVIDENCE IN VIOLATION OF 42 USC §1983

(Against Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Vazquez, Diane Vines, and Walter Vines in their individual capacities.)

990.    Plaintiffs incorporate paragraphs 1- 989 above.

991.    Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Vazquez, Diane Vines, and Walter Vines are "persons" as that term is used in the text of 42 USC §1983.

992.    Acting under color of law, Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Vazquez, Diane Vines, and Walter Vines, individually and in concert, conspired to produce false and misleading evidence that they understood and agreed would be falsely misrepresented to initiate and obtain the Plaintiffs' wrongful seizure.

993.    Acting under color of law, Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Vazquez, Diane Vines, and Walter Vines, individually and in concert, fabricated false and misleading evidence long *before*

presentation to a grand jury, and during the investigatory stage of the proceeding.

994.    Acting under color of law, Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Vazquez, Diane Vines, and Walter Vines produced false and misleading evidence that they understood and agreed would be falsely misrepresented to unlawfully obtain a search warrant at the Plaintiffs' residence and home office on March 19, 2002 and March 20, 2002.

995.    Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Vazquez, Diane Vines, and Walter Vines evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

996.    As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

997.    As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

998.    As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## THIRTY-SIXTH CAUSE OF ACTION:
## FABRICATION OF FALSE EVIDENCE IN VIOLATION OF
## 42 USC §1983

(Against Burns, Cutillo, Demizio, Loiacono, Nicholson, and Parks in their individual capacities.)

999.   Plaintiffs incorporate paragraphs 1- 998 above.

1000.  Burns, Cutillo, Demizio, Loiacono, Nicholson, and Parks are "persons" as that term is used in the text of 42 USC §1983.

1001.  Acting under color of law, Burns, Cutillo, Demizio, Loiacono, and Nicholson, individually and in concert, conspired to produce false and misleading evidence that they understood and agreed would be falsely misrepresented to initiate and obtain the Plaintiffs' wrongful seizure.

1002.  Acting under color of law, Demizio and Parks, individually and in concert with others, conspired to produce false and misleading evidence that they understood and agreed would be falsely misrepresented to maliciously continue the Plaintiffs' wrongful seizure.

1003.  Acting under color of law, Burns, Cutillo, Demizio, Loiacono, and Nicholson, individually and in concert, fabricated false and misleading evidence long *before* presentation to a grand jury, and during the investigatory stage of the proceeding.

1004.  Acting under color of law, Burns, Cutillo, Demizio, Loiacono, and Nicholson produced false and misleading evidence that they understood and agreed would be falsely misrepresented to unlawfully obtain a search warrant at the Plaintiffs' residence and home office on March 19, 2002 and March 20, 2002.

1005.  Burns, Cutillo, Demizio, Loiacono, Nicholson and Parks evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

1006.  As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

1007. As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

1008. As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and or sustained by Defendants.

### THIRTY-SEVENTH CAUSE OF ACTION:
### CONSPIRACY IN VIOLATION OF 42 USC §1983

(Against ADA Frey, ADA Varriale, ADA Mattei, Paralegal Watts, and John/Jane Doe Assistant District Attorneys in their individual capacities; Romagnano, Paccione, Botta, Gentile, and Viola in their individual and official capacities; Filippides, Forde, Knoll, Sandler and Wilson in their individual capacities; Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. in their individual and official capacities; Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Tritto, Vazquez, Diane Vines, and Walter Vines in their individual capacities; Hall and Hall & Hall LLP in their individual and official capacities; SI Bank & Trust, Sovereign Bank, Sovereign Bancorp, Inc., Banco Santander, SI Bank & Trust Foundation, and The Staten Island Foundation in their individual and official capacities; Stergious in her individual capacity; and Burns, Cutillo, Demizio, Girod, Loiacono, Nicholson, Parks, Paulsen Przybyszewski, Reiss, and Williams in their individual capacities.)

1009. Plaintiffs incorporate paragraphs 1- 1008 above.

1010. ADA Frey, ADA Varriale, ADA Mattei, Paralegal Watts, John/Jane Doe Assistant District Attorneys; Romagnano, Paccione, Botta, Gentile, Viola; Filippides, Forde, Knoll, Sandler, Wilson; Steven Orlando, Lori Orlando, Data Comm, 1276 Castleton Realty Co.; Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George

Stapleton, Frank Stapleton, Tritto, Vazquez, Diane Vines, Walter Vines; Hall, Hall & Hall LLP; SI Bank & Trust, Sovereign Bank, Sovereign Bancorp, Inc., Banco Santander, SI Bank & Trust Foundation, The Staten Island Foundation; Stergious; Burns, Cutillo, Demizio, Girod, Loiacono, Nicholson, Parks, Paulsen, Przybyszewski, Reiss, and Williams are "persons" as that term is used in the text of 42 USC §1983.

1011.  Under color of state law, ADA Frey, ADA Varriale, ADA Mattei, Paralegal Watts, John/Jane Doe Assistant District Attorneys; Romagnano, Paccione, Botta, Gentile, Viola; Filippides, Forde, Knoll, Sandler, Wilson; Steven Orlando, Lori Orlando, Data Comm, 1276 Castleton Realty Co.; Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Tritto, Vazquez, Diane Vines, Walter Vines; Hall, Hall & Hall LLP; SI Bank & Trust, Sovereign Bank, Sovereign Bancorp, Inc., Banco Santander, SI Bank & Trust Foundation, The Staten Island Foundation; Stergious; Burns, Cutillo, Demizio, Girod, Loiacono, Nicholson, Parks, Paulsen, Przybyszewski, Reiss, and Williams conspired and entered into express and or implied agreements, understandings, or meeting of the minds among themselves to deprive Plaintiffs of their constitutional rights by charging, prosecuting, and convicting the Plaintiffs for, *inter alia*, Larceny, which these Defendants knew was not supported by probable cause.

1012.  ADA Frey, ADA Varriale, ADA Mattei, Paralegal Watts, John/Jane Doe Assistant District Attorneys; Romagnano, Paccione, Botta, Gentile, Viola; Filippides, Forde, Knoll, Sandler, Wilson; Steven Orlando, Lori Orlando, Data Comm, 1276 Castleton Realty Co.; Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank

Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Tritto, Vazquez, Diane Vines, Walter Vines; Hall, Hall & Hall LLP; SI Bank & Trust, Sovereign Bank, Sovereign Bancorp, Inc., Banco Santander, SI Bank & Trust Foundation, The Staten Island Foundation; Stergious; Burns, Cutillo, Demizio, Girod, Loiacono, Nicholson, Parks, Paulsen Przybyszewski, Reiss, and Williams willfully participated in this illegal objective by various means, with the intent to further some purpose of the conspiracy, including, for example:

a) to obtain the Plaintiffs' wrongful indictment and conviction based on perjured testimony;

b) stealing the Plaintiffs' money and property for DA Lehr's illegal campaign fund raising scheme;

c) covering up, tying off, and destroying all evidence that leads to the DA's black operation or the Staten Island Supreme Court's complicity in the DA's Continuing Criminal Enterprise;

d) stealing, delaying and/or destroying the Plaintiffs' mail to obtain their wrongful indictment and conviction;

e) targeting Plaintiff Robert J. Fileccia, Esq., his experts, private investigators, and/or defense lawyers for retaliatory seizures;

f) fabricating false evidence to obtain the Plaintiffs' wrongful indictment and conviction;

g) concealing exculpatory evidence to obtain the Plaintiffs' wrongful indictment and conviction;

h) destroying exculpatory evidence to obtain the Plaintiffs' wrongful

indictment and conviction;

i)  publishing false and inflammatory public statements concerning Plaintiffs to irreparably prejudice the jury pool and their right to a fair trial;

j)  to bribe, threaten, or otherwise influence a witness to testify falsely before a grand jury;

k)  fabricating false evidence to constructively amend the Plaintiffs' indictment;

l)  to bribe, threaten, or otherwise influence Plaintiffs' defense lawyers to deny the Plaintiffs' their right to counsel and a fair trial;

m)  agreeing to make false statements to law enforcement and or the Supreme Court in order to obtain an order of protection against the Plaintiffs' and or their private investigators without probable or reasonable cause;

n)  to obtain a search warrant of the Plaintiffs' homes and offices without probable or reasonable cause;

o)  concealing a warrantless search and seizure (break-in) at 496 Willowbrook Road in Staten Island on March 19 and 20, 2002;

p)  concealing an expired search warrant dated February 25, 2002 at 496 Willowbrook Road in Staten Island;

q)  secreting and or destroying a search warrant application dated February 25, 2002; and

r)  tampering with a search warrant application dated March 15, 2002.

1013.  ADA Frey, ADA Varriale, ADA Mattei, Paralegal Watts, John/Jane Doe Assistant District Attorneys; Romagnano, Paccione, Botta, Gentile, Viola; Filippides, Forde, Knoll,

Sandler, Wilson; Steven Orlando, Lori Orlando, Data Comm, 1276 Castleton Realty Co.; Ann Abernethy, Alistair Abernethy, Cornier, Crawford, Edkins, Patricia Goebel, Frank Goebel, Edward Johnson, Darlene Johnson, King, Frank Orlando, Rosado, George Stapleton, Frank Stapleton, Tritto, Vazquez, Diane Vines, Walter Vines; Hall, Hall & Hall LLP; SI Bank & Trust, Sovereign Bank, Sovereign Bancorp, Inc., Banco Santander, SI Bank & Trust Foundation, The Staten Island Foundation; Stergious; Burns, Cutillo, Demizio, Girod, Loiacono, Nicholson, Parks, Paulsen, Przybyszewski, Reiss, and Williams evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

1014. As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

1015. As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

1016. As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## THIRTY-EIGHTH CAUSE OF ACTION:
## CONSPIRACY IN VIOLATION OF 42 USC §1983

(Against ADA Frey, ADA Varriale, ADA Mattei, Paralegal Watts, and John/Jane Doe Assistant District Attorneys in their individual capacities; Brafman, Baker, Brafman & Ross, Brafman and Associates in their individual and official capacities; and Shulman in his individual and official capacity.)

1017.   Plaintiffs incorporate paragraphs 1- 1016 above.

1018.   ADA Frey, ADA Varriale, ADA Mattei, Paralegal Watts, and John/Jane Doe Assistant District Attorneys; Brafman, Baker, Brafman & Ross, Brafman and Associates; and Shulman are "persons" as that term is used in the text of 42 USC §1983.

1019.   Under color of state law, ADA Frey, ADA Varriale, ADA Mattei, Paralegal Watts, and John/Jane Doe Assistant District Attorneys; Brafman, Baker, Brafman & Ross, Brafman and Associates; and Shulman conspired and entered into express and or implied agreements, understandings, or meeting of the minds among themselves to deprive Plaintiffs of their constitutional rights by continuing the Plaintiffs' malicious prosecution for, *inter alia*, Larceny, which these Defendants knew was not supported by probable cause.

1020.   ADA Frey, ADA Varriale, ADA Mattei, Paralegal Watts, and John/Jane Doe Assistant District Attorneys; Brafman, Baker, Brafman & Ross, Brafman and Associates; and Shulman willfully participated in this illegal objective by various means, with the intent to further some purpose of the conspiracy, including, for example:

   a)   maliciously continuing the Plaintiffs' seizure;

   b)   stealing the Plaintiffs' money and property;

   c)   to bribe, threaten, or otherwise influence a witness not to testify against ADA Frey about his theft of the Plaintiffs' mail;

   d)   coercing the Plaintiffs to plead guilty knowing them to be innocent;

   e)   concealing exculpatory evidence;

   f)   destroying exculpatory evidence;

   g)   stripping the Plaintiffs of effective assistance of counsel;

h)  breaching the Plaintiffs' attorney-client privilege;

i)  conspiring to violate the Plaintiffs' access to courts;

j)  creating fraudulent alibis for State Supreme Court Judges;

k)  aiding and abetting prosecutors' criminal activity;

l)  concealing prosecutors' criminal activity (misprision of felony);

m)  concealing a warrantless search and seizure (break-in) at 496 Willowbrook Road in Staten Island on March 19 and 20, 2002 to continue the Plaintiffs' seizure;

n)  concealing an expired search warrant dated February 25, 2002 at 496 Willowbrook Road in Staten Island to continue the Plaintiffs' seizure;

o)  secreting and or destroying a search warrant application dated February 25, 2002 to continue the Plaintiffs' seizure; and

p)  covering up, tying off, and destroying all evidence that leads to the DA's black operation or the Staten Island Supreme Court's complicity in the DA's Continuing Criminal Enterprise.

1021.  ADA Frey, ADA Varriale, ADA Mattei, Paralegal Watts, and John/Jane Doe Assistant District Attorneys; Brafman, Baker, Brafman & Ross, Brafman and Associates; and Shulman evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

1022.  As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

1023.  As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of

education, and irreparable harm to their reputation.

1024.  As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

## THIRTY-NINTH CAUSE OF ACTION:
## ILLEGAL SEARCH AND SEIZURE IN VIOLATION OF
## 42 USC §1983

(Against ADA Frey, Paralegal Watts, John/Jane Doe Assistant District Attorneys in their individual capacities; Romagnano, John/Jane Doe Police Officers in their individual and official capacities; Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. in their individual and official capacities.)

1025.  Plaintiffs incorporate paragraphs 1- 1024 above.

1026.  ADA Frey, Paralegal Watts, John/Jane Doe Assistant District Attorneys, Romagnano, John/Jane Doe Police Officers; Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. are "persons" as that term is used in the text of 42 USC §1983.

1027.  Acting under color of law, John/Jane Doe NYPD Police officers assigned to the DAOS/R, conducted an illegal warrantless confirmatory search of 496 Willowbrook Road in Staten Island, on or about February 25, 2002.

1028.  Acting under color of law, Romagnano, various John/Jane Doe Police Officers, and various John/Jane Doe Assistant District Attorneys conducted an illegal warrantless search and seizure at 496 Willowbrook Road in Staten Island, on March 19, 2002.

1029.  Acting under color of law, Romagnano, various John/Jane Doe Police Officers, and various John/Jane Doe Assistant District Attorneys conducted an illegal warrantless search and seizure at 496 Willowbrook Road in Staten Island, on March 20, 2002.

1030.  Acting under color of law, ADA Frey and Paralegal Watts initiated and instigated the illegal warrantless confirmatory search of 496 Willowbrook Road on or about February 25, 2002.

1031.  Acting under color of law, ADA Frey, Paralegal Watts, Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. conducted illegal warrantless searches and seizures of the Plaintiffs' United States Mail without the Plaintiffs' knowledge or consent.

1032.  Acting under color of law, ADA Frey initiated an illegal search and seizure of the Plaintiffs' residence and home office at 496 Willowbrook Road in Staten Island by preparing a search warrant application dated March 15, 2002 that contained more than two hundred false statements and materials omissions. ADA Frey prepared the fraudulent search warrant application during the investigatory stage of the proceedings and knew that the facts recited in the affidavit were false and did not constitute probable cause.

1033.  Acting under color of law, Romagnano initiated an illegal search and seizure of the Plaintiffs' residence and home office at 496 Willowbrook Road in Staten Island by preparing a search warrant application dated March 15, 2002 that contained more than two hundred false statements and materials omissions. Romagnano prepared the fraudulent search warrant application during the investigatory stage of the proceedings and knew that the facts recited in the affidavit were false and did not constitute probable cause.

1034.  The foregoing illegal warrantless searches and seizures were obtained and or executed without probable or reasonable cause.

1035.  ADA Frey, Paralegal Watts, John/Jane Doe Assistant District Attorneys, Romagnano,

John/Jane Doe Police Officers; Steven Orlando, Lori Orlando, Data Comm, and 1276 Castleton Realty Co. evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

1036. As a result of these Defendants' conduct, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

1037. As a direct and foreseeable consequence of these deprivations, Plaintiffs have suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to their reputation.

1038. As a further consequence of these deprivations, Plaintiffs were required to retain counsel to represent them in the criminal proceeding, and incurred expenses associated with defending against the unlawful criminal proceeding initiated and sustained by Defendants.

### FORTIETH CAUSE OF ACTION:
### VIOLATION OF 42 USC §1983
### (MONELL V. DEP'T OF SOCIAL SERVS., 436 U.S. 658 (1977))

(Against The City, by and through its policymakers DA Donovan, DA Murphy, DA Lehr, Ray Kelly, and Thompson, in their official capacities.)

A. Officials with Final Policymaking Authority for The City Approved the Unconstitutional Conduct of Their Subordinates.)

1039. Plaintiff incorporates paragraphs 1- 1038 above.

1040. The City, by and through its policymakers DA Murphy, DA Lehr, DA Donovan, Ray Kelly and Thompson had contemporaneous knowledge through the chain of command that the named Defendants in their respective commands violated constitutional standards, fabricated false evidence, concealed exculpatory evidence, unlawfully seized,

maliciously prosecuted, conspired and acted in concert to violate the Plaintiffs' constitutional rights.

1041. Policymaker DA Murphy signed a "SPECIAL INFORMATION" dated March 18, 2002 which states:

> "I, WILLIAM MURPHY, District Attorney of the County of Richmond, City and State of New York, pursuance to CPL §200.65 do hereby state that I have reviewed the substance of the evidence presented to the Grand Jury and concur in the judgment of the charge of Enterprise Corruption (PL § 460.20) is consistent with the legislative findings contained in PL Art. 460."

Dated: Staten Island, New York
March 18, 2002

*William Murphy*
WILLIAM L. MURPHY
District Attorney
Richmond County

1042. Policymaker DA Murphy's signature on the SPECIAL INFORMATION is irrefutable evidence of his personal review of the fabricated evidence, perjured testimony and deliberately misleading presentation before the grand jury.

1043. Policymakers DA Murphy and DA Lehr commanded, approved, ratified, and encouraged their subordinates (including ADAs and NYPD police officers) unconstitutional acts and omissions.

1044. Policymaker DA Donovan approved, ratified, and encouraged his subordinates (including ADAs and NYPD police officers) unconstitutional acts and omissions.

1045. Plaintiffs sent Policymaker DA Donovan at least thirty five (35) letters informing him of the foregoing constitutions deprivations and violations who ignored the notifications with deliberate indifference for the Plaintiffs' constitutional rights.

1046. Policymaker DA Donovan failed to act or respond to the Plaintiffs' letters and repeated complaints of civil rights violations evidencing deliberate indifference for the Plaintiffs' constitutional rights. DA Donovan turned a blind eye to his officers' habitual criminal

and unconstitutional acts and omissions.

1047. Upon information and belief, policymaker Ray Kelly agreed to, approved, ratified, and encouraged his subordinates unconstitutional acts and omissions.

1048. Policymaker Thompson agreed to, approved, ratified, and encouraged his subordinates unconstitutional acts and omissions.

1049. It would have been plainly obvious to a reasonable policymaker that such conduct would lead to deprivations of Plaintiffs' constitutional rights.

1050. As a direct and foreseeable consequence of these policy decisions, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

### B.  DA Donovan Established an Unconstitutional Policy and Custom

1051. In a letter dated July 5, 2005, DA Donovan informed the Plaintiff of his personal policy and custom not to intervene or otherwise discuss any aspect of an ongoing criminal case with defense counsel regardless of the unconstitutional acts or omissions of his assistants or law enforcement personnel.

1052. DA Donovan knew – with reasonable certainty – that significant violations of innocent citizens' constitutional rights would occur.

1053. The City, by and through its policymaker DA Donovan, evinced deliberate indifference for the Plaintiffs' constitutional rights.

1054. The City's unconstitutional policies and customs were (a) deliberately or recklessly indifferent to the Plaintiffs' constitutional rights; and to the issue of whether innocent people were being convicted of crimes.

1055. The City's municipal liability here is premised upon, among other things, their failure to

adopt proper and reasonable policies and practices in the face of an obvious need to do so.

1056. As a direct and foreseeable consequence of these policy decisions, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendment to the United States Constitution.

### C. DA Donovan, DA Murphy, DA Lehr, and Thompson Established an Unconstitutional Policy and Custom

1057. The City, by and through its policymakers DA Donovan, DA Murphy, and DA Lehr have established an unconstitutional policy and custom whereby prosecutors are paid "one time payments" based on "performance evaluations," i.e. convictions.

1058. DA Donovan, DA Murphy, and DA Lehr have implemented a policy and custom that encourages prosecutors to falsely accuse, falsely arrest, falsely imprison, and maliciously prosecute innocent United States Citizens for profit and career advancement.

1059. DA Donovan, DA Murphy, and DA Lehr's policy and custom financially rewards prosecutors who are predators.

1060. Moreover, Policymaker Thompson performed an audit of the Richmond County District Attorney's Office and prepared a written report dated January 7, 2005 entitled, "Audit Report on the Financial and Operating Practices of the Richmond County District Attorney's Office," which I incorporate by reference and make a part hereof.

1061. The January 7, 2005 report reveals that prosecutors were paid approximately one half million dollars of "One-Time Payments Without Supporting Justification" in the fiscal year July 1, 2002 through June 30, 2003.

1062. Thompson also uncovered "Special Expenditure" accounts that held several hundred

thousand dollars of unidentified cash. DA Donovan precluded Thompson from investigating the sources and uses of the cash.

1063. Instead, Policymaker Thompson allowed DA Donovan and his office to be self-policing, and watched the accounts balloon to several million dollars according to recent newspaper articles in December of 2009.

1064. DA Donovan, DA Murphy, and DA Lehr's unconstitutional policy and custom encourages prosecutors to file frivolous civil forfeiture proceedings that generate unlimited cash that prosecutors need not, according to Thompson, account for.

1065. As a result of the foregoing, DA Donovan, DA Murphy, DA Lehr, and Thompson approved and ratified the unconstitutional acts and omissions of their Assistant District Attorneys and knew with reasonably certainty would result in violation of the Plaintiffs' constitutional rights.

1066. The City's unconstitutional customs, decisions, policies and or indifferent employee training or supervision were (a) deliberately or recklessly indifferent to a criminal defendant's constitutional rights; and (b) deliberately or recklessly indifferent to the issue of whether innocent people were being convicted of crimes.

1067. The City's municipal liability here is premised upon, among other things, their failure to adopt proper and reasonable policies and practices in the face of an obvious need to do so.

1068. As a direct and foreseeable consequence of these policy decisions, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendment to the United States Constitution.

D. Policymakers DA Donovan, DA Murphy, DA Lehr, Ray Kelly and

217

Thompson Failed to Adequately Train and Supervise their Subordinates.

1069. The City, by and through its policymakers DA Donovan, DA Murphy, DA Lehr, Ray Kelly and Thompson were grossly negligent in managing and supervising their subordinates who caused and procured the Plaintiffs' unlawful seizure and malicious prosecution without reasonable or probable cause.

1070. The City, by and through its policymakers DA Donovan, DA Murphy, DA Lehr, Ray Kelly and Thompson failed to adequately train or supervise their subordinates relating to:

    a) their obligation to refrain from fabricating evidence;

    b) their obligation to avoid the use of fabricated evidence;

    c) their obligation to disclose Brady material;

    d) their obligation to avoid the use of perjured testimony;

    e) their obligation to refrain from suborning perjury;

    f) their obligation to disclose exculpatory evidence;

    g) their obligation to disclose Rosario material;

    h) their obligation to refrain from constructively amending indictments;

    i) their obligation to avoid framing innocent US citizens;

    j) their obligation to avoid accepting bribes or other form of compensation in return for convicting innocent US citizens;

1071. The City, by and through its policymakers DA Donovan, DA Murphy, DA Lehr, Ray Kelly and Thompson, knew to a moral certainty that their subordinates would confront the particular situations described in (a) through (j) above.

1072. The City, by and through its policymakers DA Donovan, DA Murphy, DA Lehr, Ray Kelly and Thompson knew the situations described in (a) through (j) above presents the

subordinates with a difficult choice of the sort that training or supervision would make less difficult or that there is a history of employees mishandling the situation.

1073. The City, by and through its policymakers DA Donovan, DA Murphy, DA Lehr, Ray Kelly and Thompson, knew that the wrong choice by the subordinates frequently causes constitutional deprivations.

1074. As a direct and foreseeable consequence of the Policymakers DA Donovan, DA Murphy, DA Lehr, Ray Kelly and Thompson's failure to train or supervise their subordinates, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendment to the United States Constitution.


## FORTY-FIRST CAUSE OF ACTION:
## DESTRUCTION OF EVIDENCE IN VIOLATION OF 42 USC §1983

(Against Obokkobits, Silverio, Phillpotts and Trabitz in their official and individual capacities.)

1075. Plaintiffs incorporate paragraphs 1- 1074 above.

1076. The NYPD Property Clerks Obokkobits, Silverio, Phillpotts, and Deputy Chief Jack J. Trabitz conspired and acted in concert with the Richmond County District Attorney's Office to destroy the chain of custody and integrity of the Plaintiffs property and evidence.

1077. As a direct and foreseeable consequence of the Policymakers Trabitz failure to train or supervise his subordinates, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendment to the United States Constitution.


## FORTY-SECOND CAUSE OF ACTION:
## STATE CLAIMS

219

1078.   Plaintiffs incorporate paragraphs 1- 1077 above.

1079.   We hereby respectfully place the named Defendants on notice of the following state claims that will be set forth in detail and with specificity in the Plaintiffs' amended complaint based upon the foregoing facts, and documents that are incorporated by reference: Malicious prosecution and conspiracy, false arrest, obstruction of justice and conspiracy, reckless or negligent failure to properly hire, train, and supervise the City employees, and negligence.

## ACKNOWLEDGMENT

1080.   Reading the facts of this case is like reading the story of David and Goliath. We are continually amazed that we and our family survived those 5 ½ years of onslaught brought against us. When we came up against this *Giant* in battle, there was only One who could ensure our victory; God! It was He alone who gave us courage to speak and strength to stand.

1081.   We were in a fight for our lives. The charges against us did not just have the potential to utterly destroy me and my brother, Richard, by putting us in prison for untold years; they also sought to destroy our innocent eighty-five year old mother, an innocent mail carrier, and anyone who tried to help.

1082.   We owe our all to God for saving us from sure defeat and even death. It was He who saved my daughter, Sofia Christina's life. It was He who opened the door to the right connections with people who would take up our cause to ensure that justice was served. It was He who led us to the truth and uncovered the DA's schemes at every turn.

1083. Through it all, we are fully convinced that it is only by God's grace that the truth was revealed time and time again, and it was only by His hand that we were able to endure. Our hearts are overwhelmed with gratitude to God for His intervention during a season of time when it appeared all was lost. He proved His faithfulness throughout it all and we are certain He will carry us through to the end.


## PRAYER FOR RELIEF

1084. WHEREFORE, to redress the injuries proximately and directly caused by Defendants' conduct as stated in Paragraphs 1- 1068 above,

a) Damages in an amount to be established at trial as compensation for constitutional deprivations; past and future economic loss, physical harm, emotional trauma, loss of privacy, and loss of reputation; loss of education; and expenses associated with defending against the criminal proceedings initiated and sustained by Defendants' unlawful conduct;

b) Damages in the amount to be established at trial to punish Defendants for outrageous conduct, pursued out of actual malice that recklessly and callously disregarded and was deliberately indifferent to Plaintiffs' constitutional rights, to discourage them from engaging similar conduct in the future, and to deter others similarly situated in engaging in similar conduct;

c) An award of attorneys' fees, including attorneys' fees pursuant to 42 USC §1988(b);

d) An award for reasonable and customary costs, expenses, and interest incurred in pursuit of this action;

e) A permanent injunction prohibiting Defendant The City and the Richmond County District Attorney's Office (DA Donovan), and their agents, servants and representatives, from destroying any evidence relating to Indictment Nos. 62/2002 and 23/2004; and

f) Whatever additional relief the Court may deem proper.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all claims so triable.

Dated: February 27, 2010                    Respectfully submitted,

_____
Robert J. Fileccia, Esq. (RF 5166)
*Pro Se* Plaintiff
496 Willowbrook Road
Staten Island, N.Y. 10314
Tel. (718) 982-1573
Email: catchaprosecutor@aol.com

_____
Richard Fileccia
*Pro Se* Plaintiff
496 Willowbrook Road
Staten Island, N.Y. 10314
Tel. (718) 982-1573

1083.  Through it all, we are fully convinced that it is only by God's grace that the truth was revealed time and time again, and it was only by His hand that we were able to endure. Our hearts are overwhelmed with gratitude to God for His intervention during a season of time when it appeared all was lost. He proved His faithfulness throughout it all and we are certain He will carry us through to the end.

## PRAYER FOR RELIEF

1084.  WHEREFORE, to redress the injuries proximately and directly caused by Defendants' conduct as stated in Paragraphs 1- 1083 above,

a)  Damages in an amount to be established at trial as compensation for constitutional deprivations; past and future economic loss, physical harm, emotional trauma, loss of privacy, and loss of reputation; loss of education; and expenses associated with defending against the criminal proceedings initiated and sustained by Defendants' unlawful conduct;

b)  Damages in the amount to be established at trial to punish Defendants for outrageous conduct, pursued out of actual malice that recklessly and callously disregarded and was deliberately indifferent to Plaintiffs' constitutional rights, to discourage them from engaging similar conduct in the future, and to deter others similarly situated in engaging in similar conduct;

c)  An award of attorneys' fees, including attorneys' fees pursuant to 42 USC §1988(b);

d)  An award for reasonable and customary costs, expenses, and interest incurred in pursuit of this action;

221

1083.  Through it all, we are fully convinced that it is only by God's grace that the truth was revealed time and time again, and it was only by His hand that we were able to endure. Our hearts are overwhelmed with gratitude to God for His intervention during a season of time when it appeared all was lost. He proved His faithfulness throughout it all and we are certain He will carry us through to the end.

## PRAYER FOR RELIEF

1084.  WHEREFORE, to redress the injuries proximately and directly caused by Defendants' conduct as stated in Paragraphs 1- 1083 above,

    a)  Damages in an amount to be established at trial as compensation for constitutional deprivations; past and future economic loss, physical harm, emotional trauma, loss of privacy, and loss of reputation; loss of education; and expenses associated with defending against the criminal proceedings initiated and sustained by Defendants' unlawful conduct;

    b)  Damages in the amount to be established at trial to punish Defendants for outrageous conduct, pursued out of actual malice that recklessly and callously disregarded and was deliberately indifferent to Plaintiffs' constitutional rights, to discourage them from engaging similar conduct in the future, and to deter others similarly situated in engaging in similar conduct;

    c)  An award of attorneys' fees, including attorneys' fees pursuant to 42 USC §1988(b);

    d)  An award for reasonable and customary costs, expenses, and interest incurred in pursuit of this action;

1083.  Through it all, we are fully convinced that it is only by God's grace that the truth was revealed time and time again, and it was only by His hand that we were able to endure. Our hearts are overwhelmed with gratitude to God for His intervention during a season of time when it appeared all was lost. He proved His faithfulness throughout it all and we are certain He will carry us through to the end.

## PRAYER FOR RELIEF

1084.  WHEREFORE, to redress the injuries proximately and directly caused by Defendants' conduct as stated in Paragraphs 1- 1083 above,

    a)  Damages in an amount to be established at trial as compensation for constitutional deprivations; past and future economic loss, physical harm, emotional trauma, loss of privacy, and loss of reputation; loss of education; and expenses associated with defending against the criminal proceedings initiated and sustained by Defendants' unlawful conduct;

    b)  Damages in the amount to be established at trial to punish Defendants for outrageous conduct, pursued out of actual malice that recklessly and callously disregarded and was deliberately indifferent to Plaintiffs' constitutional rights, to discourage them from engaging similar conduct in the future, and to deter others similarly situated in engaging in similar conduct;

    c)  An award of attorneys' fees, including attorneys' fees pursuant to 42 USC §1988(b);

    d)  An award for reasonable and customary costs, expenses, and interest incurred in pursuit of this action;

221

e)  A permanent injunction prohibiting Defendant The City and the Richmond County District Attorney's Office (DA Donovan), and their agents, servants and representatives, from destroying any evidence relating to Indictment Nos. 62/2002 and 23/2004; and

f)  Whatever additional relief the Court may deem proper.

**JURY DEMAND**

Plaintiffs hereby request a trial by jury on all claims so triable.

Dated: February 27, 2010                         Respectfully submitted,

Robert J. Fileccia, Esq. (RF 5166)
*Pro Se* Plaintiff
496 Willowbrook Road
Staten Island, N.Y. 10314
Tel. (718) 982-1573
Email: catchaprosecutor@aol.com

Richard Fileccia
*Pro Se* Plaintiff
496 Willowbrook Road
Staten Island, N.Y. 10314
Tel. (718) 982-1573